710 F.2d 1297
 Bankr. L. Rep. P 69,334
In re FRIENDSHIP MEDICAL CENTER, LTD., Bankrupt.
James JONES and Rudolph Moragne, Plaintiffs-Appellants,
v.
Nathan YORKE, Successor Trustee for the Estate of Friendship
Medical Center, Ltd., Bankrupt, and Illinois
Department of Public Aid, Defendants-Appellees.
 No. 82-2715.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 19, 1983.
Decided July 11, 1983.
 
 Richard L. Clayter, Tucker & Watson, Chicago, Ill., for plaintiffs-appellants.
 Barbara L. Greenspan, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, and PELL and NICHOLS,* Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from the district court's decision affirming the bankruptcy court's dismissal of the appellants' complaint against the Illinois Department of Public Aid (IDPA). The bankruptcy court held that it had no jurisdiction over the appellants' action against IDPA because the case did not involve property owned by or in the actual or constructive possession of the bankrupt. The court further held that the action was barred by the Eleventh Amendment. The appellants contend that the courts erred in deciding both issues because the bankrupt had constructive possession of the property at issue and because the state agency waived its sovereign immunity defense.
 
 I. FACTS
 
 2
 Because the bankruptcy court decided this case on a motion to dismiss, we will adopt the appellants' statement of the facts for purposes of this appeal.
 
 
 3
 On July 7, 1978, plaintiffs-appellants James Jones and Rudolph Moragne filed a complaint against IDPA and David Taylor, the trustee for the estate of the Friendship Medical Center, Ltd. (Friendship or the bankrupt), who has since been succeeded as trustee by Nathan Yorke. IDPA administers the Illinois Medicaid program which reimburses physicians who treat eligible patients. The appellants are physicians who provided patients with treatment at Friendship between January 1976 and September 1977.
 
 
 4
 The appellants contend that, pursuant to an agreement between IDPA, Friendship, and the doctors, IDPA sent warrants to Friendship payable to the appellants as reimbursement for services rendered. They allege that, instead of passing the warrants on to the doctors, Friendship fraudulently indorsed the warrants and appropriated them to their own use. They further assert that IDPA realized that this was occurring but did not alter their practice of sending the warrants to Friendship. Allegedly because Friendship owed IDPA money for unrelated matters, the agency began to offset part of Friendship's debt to it by withholding the warrants payable to the doctors.
 
 
 5
 In their complaint, the appellants sought to obtain (or reclaim, as they entitled it) three groups of funds. The first was funds in IDPA's possession used to offset Friendship's indebtedness to IDPA. The second was other funds never paid by IDPA for services rendered by the appellants. The third, which the appellants state in their brief is not at issue in this appeal, was funds paid by IDPA to Friendship but never turned over to the appellants.
 
 
 6
 IDPA filed its answer to the complaint on August 7, 1978, raising both the Eleventh Amendment objection and the challenge to the bankruptcy court's subject matter jurisdiction. On March 26, 1980, the bankruptcy court dismissed the complaint against IDPA, holding both that the Eleventh Amendment barred the action and that the court lacked subject matter jurisdiction. Jones v. Taylor (In re Friendship Medical Center, Ltd.), 3 B.R. 304 (Bkrtcy.N.D.Ill.1980). The district court affirmed this decision on September 20, 1982.
 
 II. DISCUSSION
 A. The Eleventh Amendment
 
 7
 The bankruptcy and district courts held that the appellants' action against appellee IDPA was barred by the Eleventh Amendment. Both courts relied upon the holding in Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), that federal courts may not enter judgments to be paid out of public funds in the state treasury without the consent of the state.
 
 
 8
 The appellants seek to avoid the sovereign immunity defense by titling their action a "reclamation" suit. The suggestion is that they are seeking to reclaim property belonging to them that is wrongfully held by the state. The Eleventh Amendment, however, cannot be so easily circumvented by the clever choice of words. First, neither the appellants nor the bankrupt ever had possession of the money allegedly withheld by IDPA, so neither can "reclaim" it. Second, a judgment against IDPA would be paid out of the Illinois treasury regardless of what the action is called and thus the case still runs afoul of the rule in Edelman v. Jordan, which recognizes no exception to its rule. Finally, we note that allowing a party to overcome the sovereign immunity defense by titling an action a reclamation suit would virtually eliminate the defense, because almost any action against a state could be characterized as involving money in some sense wrongfully withheld.
 
 
 9
 A state may waive its Eleventh Amendment defense, however, and the appellants contend that IDPA has done so. A plaintiff bears a heavy burden in showing waiver. In Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam), the Supreme Court reaffirmed the holding in Jordan that "we will find waiver only where stated 'by the most express language or by such overwhelming implication from the text [of a statute] as [will] leave no room for any other reasonable construction.' " 415 U.S. at 673, 94 S.Ct. at 1361 (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). To meet this burden, the appellants first contend that IDPA made an insufficient jurisdictional objection and that it waived whatever defense it had by defending the case on the merits.
 
 
 10
 The appellants' contentions are without merit. IDPA raised the Eleventh Amendment defense on the first page of its answer to the appellants' complaint and subsequently raised the defense before the district court and before us. Given that the agency could have raised the defense for the first time on appeal, Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974), this clearly was sufficient. Similarly, because the agency could have raised the defense on appeal, there is no merit in the appellants' contention that IDPA waived the defense by defending on the merits instead of resting exclusively on the Amendment.
 
 
 11
 The appellants next contend that the agency waived its sovereign immunity defense when it filed its proof of claim, seeking $233,176.79 from Friendship, on April 12, 1978. Their argument is that by invoking the jurisdiction of the bankruptcy court by filing its claim, the agency waived its immunity and opened itself up to claims against it arising from dealings with the bankrupt. The bankruptcy court rejected the appellants' argument, holding that the consent that results from filing a proof of claim is limited to that necessary for the disposition of the claim. The court concluded that a resolution of the appellants' claim was not necessary to dispose of IDPA's claim because the two claims were completely unrelated.
 
 
 12
 The Supreme Court discussed the effect of the filing of a proof of claim on a state's sovereign immunity defense in Gardner v. New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). In that case, New Jersey filed a claim for unpaid taxes against the bankrupt. Faced with objections to the claim by other creditors, the trustee petitioned the bankruptcy court to adjudicate the conflicting claims. The state objected to the trustee's petition on the ground that it constituted an impermissible suit against it.
 
 
 13
 The Court held that where the state had filed the claim and where no one was seeking money from the state, there was no sovereign immunity problem. "If the claimant is a State, the procedure of proof and allowance is not transmuted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State." Id. at 573-74, 67 S.Ct. at 471-472. The Court concluded that the immunity is waived to the extent necessary to adjudicate the claim made by the state. "When the State becomes the actor and files a claim against the fund, it waives any immunity which it otherwise might have had respecting the adjudication of the claim." Id. at 574, 67 S.Ct. at 472.
 
 
 14
 More recently, this circuit has adopted this rule of limited waiver in the closely related area of federal sovereign immunity.[T]he waiver of immunity is limited to matters ... arising out of the same transaction or occurrence which is the subject matter of the suit, to the extent of defeating the plaintiff's claim. Waiver does not extend to what federal procedure terms "permissive" counterclaims, ... claims for affirmative relief in excess of or different in kind from that sought by the plaintiff.
 
 
 15
 Federal Savings & Loan Insurance Corp. v. Quinn, 419 F.2d 1014, 1017 (7th Cir.1969) (emphasis added). See United States v. Kallen (In re Oxford Marketing, Ltd.), 444 F.Supp. 399, 403 (N.D.Ill.1978) ("when the Government sues it only consents to counterclaims arising out of the same transaction or occurrence which is the subject matter of the suit"). Thus the bankruptcy court correctly stated the effect of the filing of the proof of claim on the sovereign immunity defense.
 
 
 16
 The appellants contend, however, that the Second Circuit takes the position that the filing of a proof of claim waives the sovereign immunity defense completely. They cite the language in Connecticut v. Crisp (In re Crisp), 521 F.2d 172, 178 (2d Cir.1975), that by filing a proof of claim, the state in that case invoked the jurisdiction of the bankruptcy court and thereby "waived any possible sovereign immunity."
 
 
 17
 Crisp involved facts almost identical to those in Gardner v. New Jersey and the opinion makes it clear that the court was not announcing a new broad rule of waiver. The bankruptcy court held that a debt owed by the bankrupt to Connecticut was dischargeable. The state contended on appeal that the discharge was barred by the Eleventh Amendment even though it had filed a proof of claim for the debt. The court rejected this contention, holding that the Amendment was inapplicable because no one was suing Connecticut or seeking payment from the state treasury. 521 F.2d at 178. What the Court meant by its reference to waiver was that, by filing its claim, Connecticut waived its objection to the bankruptcy court's power to deny the claim.
 
 
 18
 No claim against the state was involved in Crisp. In the instant case, by contrast, the appellants are suing the state and, if they were to prevail, would obtain money out of the public treasury of Illinois. Crisp therefore does not support the appellants' proposition that a state completely waives its sovereign immunity defense and is open to actions for affirmative relief by others whenever it files a proof of claim. See Ohio v. Madeline Marie Nursing Homes # 1 & # 2, 694 F.2d 449, 462 n. 10 (6th Cir.1982) ("[Crisp ] did not discuss waiver of the Eleventh Amendment for affirmative relief against the state").
 
 
 19
 Finally, the appellants attempt to come within the limited area of waiver created by the filing of the proof of claim by asserting that the subject of IDPA's claim was the same as that in the appellants' action. Both the bankruptcy and district courts held that the two actions were entirely separate.
 
 
 20
 As noted, Gardner and Quinn establish that the limited waiver of sovereign immunity created by the filing of the claim extends only so far as necessary to adjudicate that claim, such as considering the objections of other parties to the claim. The appellants in the instant case, however, do not show in what way resolution of their claim against IDPA is necessary for an adjudication of IDPA's claim against Friendship. First, the appellants' own statement of facts points out the unrelated nature of the two claims: "Friendship Medical Center was indebted to IDPA ... for matters having nothing whatever to do with plaintiffs or their services." Second, IDPA's claim is for money that Friendship owes it. The appellants' claim against IDPA is for funds the agency owes them. A recovery against the state would not decrease the amount claimed by the state nor would it affect the legal basis on which the claim is made.
 
 
 21
 Thus we conclude that the district court properly affirmed the bankruptcy court's dismissal of the action against IDPA because of the Eleventh Amendment.B. Subject Matter Jurisdiction
 
 
 22
 A bankruptcy court has jurisdiction only over property owned by or in the actual or constructive possession of the bankrupt. Montco, Inc. v. Glatzer (In re Emergency Beacon Corp.), 665 F.2d 36, 37-38 & 38 n. 1 (2d Cir.1981). As an alternative ground for dismissal, both the bankruptcy court and the district court held that the bankruptcy court had no jurisdiction over the action against IDPA because the bankrupt had never had actual or constructive possession of the property at issue. The appellants contend that the property was in the constructive possession of the bankrupt.
 
 
 23
 We agree with the bankruptcy and district courts that the bankruptcy court was without jurisdiction because the bankrupt never had actual or constructive possession of the property. First, the trustee has never asserted a claim to the money the appellants seek from IDPA. Unless it is impossible to administer completely the bankrupt's estate, a bankruptcy court lacks jurisdiction of a controversy between parties over a matter in which the trustee asserts no interest. First State Bank & Trust Co. v. Sand Springs State Bank, 528 F.2d 350, 353 (10th Cir.1976). The appellants suggest no persuasive reason why resolution of their claim against IDPA is essential to a complete administration of Friendship's estate.
 
 
 24
 Second, there is a contradiction between the theory of the appellants' claim against IDPA and their contention that the bankrupt had constructive possession of the property. On the one hand, the appellants contend--as they must in order to obtain bankruptcy court jurisdiction--that the bankrupt had constructive possession of the warrants. On the other hand, they assert that Friendship had no claim to any of the warrants because they belonged to the appellants. They state that IDPA made the warrants payable to the doctors and emphasize that, because the doctors were not employees of the bankrupt, the warrants belonged to them, not Friendship. Indeed, they assert that Friendship fraudulently indorsed the warrants that IDPA sent to them. They contend that therefore it was wrong for IDPA to have offset Friendship's debt to it by withholding the warrants.
 
 
 25
 This contradiction makes it apparent to us that the appellants have attempted to obtain federal bankruptcy jurisdiction by recharacterizing a case solely between the appellants and IDPA as one intimately connected with the bankrupt's estate. The appellants labor to connect the subject of their action to the bankrupt's estate, but are unable to establish a connection because the only issue in the case is IDPA's allegedly improper refusal to pay money it owed to the appellants. Thus we affirm the district court's decision that the bankruptcy court did not have subject matter jurisdiction over the dispute.
 
 CONCLUSION
 
 26
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Philip Nichols, Jr., Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation