**In re IMPORT & MINI CAR PARTS, LTD., INC., Debtor.**

**R. David BOYER, Trustee, Plaintiff,**

**v.**

**Samuel S. CONTE, Defendant.**

**Bankruptcy No. 83–10377.**

**Adv. No. 88–1084.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Jan. 5, 1996.

858

Ward W. Miller, Fort Wayne, IN, for Movant.

Mark A. Warsco, James Young, Fort Wayne, IN, for Defendant.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

The debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 28, 1983. A Chapter 11 trustee was subsequently appointed and, on March 22, 1989, the case was converted to Chapter 7. On September 6, 1990, the bank-

ruptcy trustee recovered a judgment in this adversary proceeding against the defendant, Samuel Conte, a former principal of the debtor, in the sum of $50,224.81. Because of the anticipated difficulty and time required to collect this judgment, it was subsequently assigned to Ward Miller, as trustee, for the benefit of unpaid administrative creditors. The judgment remains unpaid.

It is Mr. Miller's belief that Mr. Conte may have fraudulently transferred non-exempt assets, apparently in an attempt to avoid the risk that they might be seized to satisfy the judgment. Specifically, Mr. Miller alleges that Mr. Conte used non-exempt assets to acquire real estate, in February of 1993, which was deeded to Mr. Conte and his wife, Carol, as tenants by the entireties, and to one Peter Conte, subject to a mortgage in favor of Cedar Creek Farms. By a motion for proceedings supplemental, Mr. Miller has asked the court to set aside this allegedly fraudulent transfer, under the auspices of garnishment proceedings, sell the property and apply the proceeds to the satisfaction of the judgment. On its own motion, the court raised the question of whether it had subject matter jurisdiction over the issues raised by the motion and its request to avoid the allegedly fraudulent transfer.[1] The matter is presently before the court on this issue.

"[J]urisdiction is the *power* to decide. It must be conferred, not assumed." *Matter of Chicago, Rock Island and Pacific R. Co.*, 794 F.2d 1182, 1188 (7th Cir.1986) (*Sanborn II*) (emphasis original); *see also In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir.1989). Congress initially vested bankruptcy jurisdiction in the district courts through 28 U.S.C. § 1334. It then authorized the district courts to refer that jurisdiction to the bankruptcy judges. *See* 28 U.S.C. § 157. This district has done so through N.D.Ind.L.R. 200.1.

For proceedings beyond the bankruptcy case itself, jurisdiction is governed by § 1334(b). This section provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The familiar litany, arising under, arising in or related to, "was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." *Matter of Wood*, 825 F.2d 90, 92 (5th Cir.1987). The references operate conjunctively to identify the scope of the court's jurisdiction. *Wood*, 825 F.2d at 93. As a result, it is not necessary to attempt to pigeonhole a particular proceeding into any one category to determine if jurisdiction is present. Instead, "it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.*

"It is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). To come within the scope of the court's "related to" jurisdiction, "the plaintiff's claims must affect the estate, not just the debtor." *Wood*, 825 F.2d at 94. Under the test adopted by the Seventh Circuit, a dispute is related to a case under title 11 only when its resolution affects the property of the estate available for distribution to creditors, the manner in which that property is to be distributed or the administration of the estate. *See Xonics*, 813 F.2d at 131; *Matter of Kubly*, 818 F.2d 643, 645 (7th Cir.1987); *see also In re Friendship Medical Center, Ltd.*, 710 F.2d 1297, 1302 (7th Cir. 1983). "Overlap between the bankrupt's affairs and another dispute is insufficient...." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989). Consequently,

---

1. Through Rule 69(a) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7069, federal judgments may be enforced through the same procedures used by the state courts. In Indiana, the owner of an unpaid judgment may, through proceedings supplemental and garnishment, seek to set aside and recover allegedly fraudulent transfers of the judgment debtor's property. *See eg. Coak v. Rebber*, 425 N.E.2d 197 (Ind.App.1981); *U.S. Marketing Concepts, Inc. v. Don Jacobs Buick–Subaru, Inc.*, 547 N.E.2d 892 (Ind.App.1989). Nonetheless, Rule 69 merely creates a procedural mechanism for exercising post-judgment jurisdiction; it cannot expand the scope of that jurisdiction. *See* Bankruptcy Rule 9030; F.R.Civ.P. 82; *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1215 (10th Cir.1992); *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1487 (7th Cir.1988).

merely because a dispute can trace its origins to a bankruptcy debtor or even to a prior order of the bankruptcy court is not sufficient to confer subject matter jurisdiction under § 1334(b). Jurisdiction requires something "more than the hovering shadow of an earlier bankruptcy...." *Langella v. Weisz*, 39 B.R. 615, 619 (E.D.N.Y.1984).

■ Despite the potential breadth of the court's bankruptcy jurisdiction, it is not perennial. The power to decide does not last forever. *Xonics*, 813 F.2d at 131. Instead, bankruptcy jurisdiction exists only for a particular purpose and only for a defined period of time. "The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. *It extends no further than its purpose.*" *Xonics*, 813 F.2d at 131 (emphasis added); *Lemco Gypsum*, 910 F.2d at 789–790. "[W]hen a dispute no longer affects the estate or the relations among creditors of the estate, the bankruptcy jurisdiction lapses...." *Matter of Kilgus*, 811 F.2d 1112, 1117 (7th Cir.1987). Consequently, just because the bankruptcy court may have once acquired jurisdiction to adjudicate a particular dispute, does not mean that it will always be able to do so. *See Xonics*, 813 F.2d at 131. For this court to be able to proceed, there must be a *bankruptcy* purpose for doing so.

■ The Seventh Circuit has repeatedly emphasized that the bankruptcy court should interpret its jurisdiction narrowly. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir.1994); *Home Ins. Co.*, 889 F.2d at 749. In doing so, the court must also be mindful of the possibility that, even though it may have acquired jurisdiction over a particular controversy at one point in time, it may lose that jurisdiction because of subsequent events. As a result, the bankruptcy court should satisfy itself that it continues to have jurisdiction at every stage of the litigation. *Cf. Matter of Deist Forest Products, Inc.*, 850 F.2d 340, 342 (7th Cir.1988).

■ When the present controversy is measured by the standards established by the Seventh Circuit, it is clear that this court lacks the jurisdiction needed to resolve it. It is, in reality, nothing more than a garden variety fraudulent conveyance action, governed by state law, brought by a creditor in an effort to collect an outstanding debt. Its only connection with the bankruptcy court is that the debt in question happens to be represented by a judgment which this court issued in favor of a bankruptcy trustee. This, however, is not enough. The bankruptcy trustee no longer owns that judgment. It passed out of the estate when it was assigned to Mr. Miller. Once the judgment left the estate, the court needs a new source of jurisdiction if further disputes involving it are to remain in federal court. *Xonics*, 813 F.2d at 131; *Lemco Gypsum*, 910 F.2d at 784. *See also Friendship Medical Center*, 710 F.2d at 1302 ("Unless it is impossible to administer completely the bankrupt's estate, a bankruptcy court lacks jurisdiction of a controversy between parties over a matter in which the trustee asserts no interest.").

In support of his contention that this court has jurisdiction over the dispute initiated by his motion for proceedings supplemental, Mr. Miller first advances two somewhat related arguments. Relying on *Riggs v. Johnson County*, 73 U.S. (6 Wall) 166, 187, 18 L.Ed. 768 (1868), he contends that this court must have the jurisdiction necessary to enforce its judgments in order to function. On a related line of reasoning, he argues that, since proceedings initiated under the auspices of garnishment or proceedings supplemental are not considered to be separate actions under Indiana law, the court may entertain them under the auspices of ancillary jurisdiction.[2] This argument overlooks fundamental differences between the jurisdiction conferred by § 1334(b) and other grants of federal jurisdiction.

2. Although the matter has been laid to rest in the Seventh Circuit, *see Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995), the court would note that the question of the district court's subject matter jurisdiction over disputes raised by garnishment actions against third parties is an issue upon which the circuits are divided. *See e.g., Sandlin*, 972 F.2d at 1212; *Skevofilax v. Quigley*, 810 F.2d 378 (3rd Cir.1987), *cert. denied, Edison Tp., N.J. v. Skevofilax*, 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987); *Berry v. McLemore*, 795 F.2d 452 (5th Cir.1986).

■ The district court's jurisdictional mandate is to give the parties before it complete relief. *John Hancock Mut. Life Ins. Co. v. Beardslee,* 216 F.2d 457, 461 (7th Cir. 1954), *cert. denied,* 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed. 751 (1955). Its ability to do so "would be incomplete and entirely inadequate", *Riggs,* 73 U.S. (6 Wall) at 187, for this purpose unless it also had the power to enforce its judgements. Bankruptcy jurisdiction is more circumscribed. It "is designed to provide a single forum for dealing with all claims to the bankrupt's assets." *Xonics,* 813 F.2d at 131. Once this jurisdictional mission has been fulfilled, the jurisdiction conferred by § 1334(b) comes to an end.

■ Beyond the differing purposes for which jurisdiction is given, there is another fundamental distinction between the jurisdiction conferred by § 1334(b) and other grants of federal jurisdiction. Ordinarily, once it has attached, subsequent events will not divest the district court of its subject matter jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 292–94, 58 S.Ct. 586, 592–93, 82 L.Ed. 845 (1938); *Smith v. Widman Trucking & Excavating, Inc.,* 627 F.2d 792, 798–99 (7th Cir.1980). This is not so with the jurisdiction conferred by § 1334(b). Bankruptcy jurisdiction is apparently unique in federal jurisprudence because of the possibility that subsequent events may cause it to lapse. One such event is where the property in question leaves the bankruptcy estate, whether by sale, *Sanborn II,* 794 F.2d at 1187, abandonment, *Xonics,* 813 F.2d at 132, or otherwise.[3]

■ The other argument Mr. Miller advances in support of jurisdiction is that the Indiana courts have no power to enforce federal judgments; thus, only this court can do so. The argument is correct only in the most limited sense and only so long as the judgment remains a federal one. It totally ignores the opportunity that the judgment of this court can be transformed (domesticated) into a state court judgment, which can then be readily enforced by the Indiana courts. Federal judgments are entitled to the same full faith and credit given to the judgments of other states. *Fidler v. Gilchrist,* 60 Ind.App. 363, 109 N.E. 796, 797 (1915). Indeed, Indiana has a statute by which the judgments of federal courts sitting in this state may be docketed with the circuit court. *See* I.C. 33–17–2–3(d). Even in the absence of this statute, the option is always available to bring suit on the judgment itself, in the same way one would enforce a judgment from another state. *See* ILE Judgments §§ 571–575. Once domesticated, there would be no

3. Another event which may cause the bankruptcy court's jurisdiction over a particular matter to come to an end is the dismissal of the underlying bankruptcy case. When this occurs, the general rule is that it should also result in the dismissal of related proceedings, because the court's jurisdiction over them depends upon their nexus to the bankruptcy case itself. *In re Smith,* 866 F.2d 576, 580 (3rd Cir.1989); *In re Porges,* 44 F.3d 159, 162 (2nd Cir.1995); *Matter of Querner,* 7 F.3d 1199, 1201 (5th Cir.1993). In certain circumstances, however, the bankruptcy court has the discretion to retain jurisdiction, because the litigation as progressed to such a point that the interests of all concerned are better served by allowing the proceeding to be concluded in the court where it began. The factors considered in deciding how to exercise this discretion include: judicial economy, convenience to the parties, fairness and comity. *Porges,* 44 F.3d at 163. The Seventh Circuit has recently adopted this position. *See Chapman v. Currie Motors, Inc.,* 65 F.3d 78 (7th Cir.1995).

If jurisdiction over the present dispute is a matter of discretion, analyzed by the same standards used to consider whether or not the bank-

ruptcy court should retain jurisdiction over a particular controversy once the underlying bankruptcy case is dismissed, the court would relinquish jurisdiction. The issues raised by the motion for proceedings supplemental and its associated request to set aside an allegedly fraudulent conveyance are separate and distinct from the issues which resulted in the judgment against the defendant and are based on events which allegedly occurred more than two years after the judgment was rendered. They are issues governed entirely by state law, involving parties who were not previously before the court. Beyond the court's inquiry into its subject matter jurisdiction, no proceedings of any substance have been conducted with regard to the issues raised by the motion; so considerations of judicial economy do not favor retaining jurisdiction. Indeed, the only reason to exercise jurisdiction over the present controversy is because it has arisen in the context of an effort to enforce a judgment of this court that was once owned by a bankruptcy trustee. In view of the fact that the trustee no longer has any interest in that judgment and the bankruptcy case itself is ready to be closed, this is not enough.

obstacle to enforcing the judgment through the state courts.

There is no bankruptcy purpose to be served by using the resources of this court to collect the judgment against Mr. Conte.[4] The estate no longer has any interest in it. Bankruptcy jurisdiction exists only where the dispute will affect the property of the estate available for distribution to creditors or the allocation of that property among them. The present action will do neither. Any assets that may become available for satisfaction of the judgment will come from the judgment debtor and/or the garnishee defendants, not from the bankruptcy estate. In the same fashion, any recovery will inure solely to the benefit of Mr. Miller, as trustee under the assignment, not to the bankruptcy trustee or to the bankruptcy estate. Enforcement of the court's judgment will have neither benefit nor detriment to the bankruptcy estate or the creditors who will share it. As a result, "there is no reason for the bankruptcy court's jurisdiction to linger." *Xonics,* 813 F.2d at 132; *Lemco Gypsum,* 910 F.2d at 789.

Plaintiff's motion for proceedings supplemental should be dismissed. An order doing so will be entered.

---

4. The only possible bankruptcy purpose, this court can identify, that might be promoted by asserting jurisdiction over the present controversy is that, by doing so, it would, potentially, help to maximize the value of the judgment by making it somewhat easier to enforce. As observed by the Seventh Circuit, "we doubt that jurisdiction of this character is a Good Thing." *Sanborn II,* 794 F.2d at 1184.