In re N. Randall SIEGER, Debtor.

Ralph H. EDWARDS, Jr., Plaintiff,

v.

N. Randall SIEGER, Defendant.

Bankruptcy No. 92–10390.
Adv. No. 92–1156.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

April 17, 1996.

Jack Roebel, Fort Wayne, Indiana, for Plaintiff.

Daniel Serban, Fort Wayne, Indiana, for Defendant.

**DECISION**

ROBERT E. GRANT, Bankruptcy Judge.

Debtor originally filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. After a detour through Chapter 11, the case was eventually converted to Chapter 7.[1] In connection with the bankruptcy, plaintiff initiated this adversary proceeding in order to obtain a determination concerning the dischargeability of debtor's obligation to it. The litigation resulted in a stipulated judgment, approved by the court, in the sum of $27,200.00, which was declared to be a nondischargeable debt.

Following entry of the judgment, plaintiff began efforts to enforce it by filing a motion for proceedings supplemental, which *inter alia* sought a garnishment order directed to the debtor's employer. On its own motion, the court raised the issue of whether it has subject matter jurisdiction over proceedings to collect a non-dischargeable money judgment entered against a bankruptcy debtor. A hearing was held to consider this question and the matter is before the court for a decision on the issue of subject matter jurisdiction.

Many of the court's concerns about its subject matter jurisdiction are explained in a decision issued on January 5, 1996 in adversary proceeding No. 88–1084, *R. David Boyer, Trustee v. Samuel S. Conte*, 200 B.R. 857, *aff'd Miller v. Conte*, 1:96–cv–55 (N.D.Ind., Apr. 9, 1996). (The court lacks jurisdiction over proceedings to collect a money judgment issued in favor of a bankruptcy trustee where the trustee no longer owns that judgment). As a result, it is not necessary to reiterate them here. *Boyer v. Conte*, however, involved questions concerning the scope of the court's "related to" jurisdiction, in connection with proceedings designed to enforce a money judgment that was once owned by a bankruptcy trustee. The present action is not and never was "related to [a] case[ ] under title 11", 28 U.S.C. § 1334(b), as that language has been defined by the Seventh Circuit. *See, e.g.,*

---

1. The administration of the bankruptcy estate has been completed and the case was closed on April 4, 1994.

**638**

*Matter of Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987) (a dispute is related to a bankruptcy case only when "it affects the amount of property available for distribution or the allocation of property among creditors.") Instead, as a proceeding designed to determine the dischargeability of a debtor's obligation to a creditor—a cause of action created by the provisions of title 11—the source for this court's jurisdiction over it is the "arising under title 11" portion of § 1334(b). *In re Cary Metal Products, Inc.,* 152 B.R. 927, 931 (Bankr.N.D.Ill.1993), *aff'd,* 158 B.R. 459 (N.D.Ill.1993), *aff'd, Zerand—Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir.1994). Although the court does not believe that the subtly different origin for its jurisdiction over the original dispute makes a difference to the outcome of the present jurisdictional inquiry, a more thorough explanation of why this is so seems appropriate.

 The Seventh Circuit's bankruptcy jurisprudence has established several constants which must stand behind any analysis of the subject matter jurisdiction exercised by the bankruptcy courts, through the order of reference, under § 1334(b). Like other federal courts, the bankruptcy court is a court of limited jurisdiction. *Matter of Kubly,* 818 F.2d 643, 645 (7th Cir.1987). Some have said "a court of extremely limited jurisdiction." *Xonics,* 813 F.2d at 129 (quoting the District Court). The scope of the jurisdiction conferred upon it is to be interpreted narrowly. *Zerand,* 23 F.3d at 161; *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746, 749 (7th Cir.1989). These two principles are little different from the concerns which underlie any analysis of the scope of federal jurisdiction. There is, however, more to the Seventh Circuit's teaching on the subject which is apparently unique to the bankruptcy arena. This involves the concept that there comes a time when the bankruptcy court's subject matter jurisdiction, even though it may have once existed, ends.

 Bankruptcy is not forever. *Pettibone Corp. v. Easley,* 935 F.2d 120, 121 (7th Cir.1991). Neither is the jurisdiction exercised by the bankruptcy court. That jurisdiction "extends no farther than its purpose." *Xonics,* 813 F.2d at 131. When that purpose no longer exists, neither does the court's jurisdiction. At that point, "bankruptcy jurisdiction lapses". *Matter of Kilgus,* 811 F.2d 1112, 1117 (7th Cir.1987) (citing *In re Chicago, Rock Island & Pacific R.,* 794 F.2d 1182, 1187–88 (7th Cir.1986)). *See also Xonics,* 813 F.2d at 131. Although these observations concerning the limited and temporary nature of bankruptcy jurisdiction have usually been made in connection with decisions addressing the scope of "related to" jurisdiction, there is no reason why they should not also animate consideration of the other elements of bankruptcy jurisdiction. So long as some aspects of the court's subject matter jurisdiction have the potential to lapse, there is no reason to believe that the other aspects of § 1334(b) are not equally susceptible to this possibility. Consequently, in connection with its jurisdictional analysis, the court must consider the bankruptcy purpose served by dischargeability litigation and whether that purpose extends far enough to include the enforcement of any resulting money judgment.

 "The goal of all bankruptcy legislation is to achieve a just and equitable distribution of the estate to the creditors and to relieve the honest debtor of his debts, giving him a fresh start." *In re Epstein,* 39 B.R. 938, 941 (Bankr.D.N.M.1984). *See also Wilson v. City Bank of St. Paul,* 84 U.S. (17 Wall.) 473, 480–481, 21 L.Ed 723, 726 (1873). "The discharge of the bankrupt's debts is an essential feature of the second function; it is what enables the bankrupt to get a 'fresh start.'" *Matter of Marchiando,* 13 F.3d 1111, 1115 (7th Cir.1994), *cert. denied, Illinois Dept. of Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Consequently, the purpose of all dischargeability litigation is to determine the extent to which the discharge will prevent a creditor's future efforts at collection. *In re Imel,* 169 B.R. 37, 39 (Bankr.W.D.Tex.1994).

 "A dischargeability complaint is, in a very real sense, nothing more than a specialized form of declaratory relief." *Imel,* 169 B.R. at 38. The essential purpose of the litigation is to obtain a declaration that a particular debt is dischargeable or non-dischargeable. *Matter of Hallahan,* 936 F.2d

1496, 1505 (7th Cir.1991). En route to answering this question, however, the court must, of necessity, also determine that there is actually a debt owed by the debtor to the creditor. In the absence of an enforceable obligation to pay, there is no liability to be discharged and nothing which needs to be the subject of a dischargeability debate. *In re Wilder,* 178 B.R. 174, 176–77 (Bankr. E.D.Mo.1995). *See also In re McKendry,* 40 F.3d 331, 337 (10th Cir.1994); *Waire v. Baker,* 145 B.R. 267, 269–270 (N.D.Ind.1992). Beyond this, although the validity and the amount of a debtor's obligation is determined by state law, the extent to which that debt may be non-dischargeable is a question of federal law. *Grogan v. Garner,* 498 U.S. 279, 282–285, 111 S.Ct. 654, 657–658, 112 L.Ed.2d 755 (1991). Consequently, the nondischargeable portion of a particular debt is not necessarily co-extensive with the debt as it exists under nonbankruptcy law. *See In re Modicue,* 926 F.2d 452, 453 (5th Cir.1991); *In re Howard,* 6 B.R. 256, 258 (Bankr.M.D.Fla. 1980); *Matter of Suter,* 59 B.R. 944 (Bankr. N.D.Ill.1986). This requires the court to make a determination concerning the amount of a nondischargeable debt. *In re Gerlach,* 897 F.2d 1048, 1052 (10th Cir.1990).

 These practical realities reveal that, although the essential purpose of dischargeability litigation is to obtain declaratory relief, it is not always possible or appropriate for the bankruptcy court to answer the ultimate question before it with a simple yes or no. Unless it is represented by a prior judgment, issues concerning the validity and the amount of a debt "are inextricably interwoven with the issue of dischargeability ..." *In re Hallahan,* 113 B.R. 975, 982 (C.D.Ill. 1990), *aff'd, Matter of Hallahan,* 936 F.2d 1496 (7th Cir.1991). "[I]t is impossible to separate the determination of dischargeability function from the function of fixing the amount of the nondischargeable debt." *In re Devitt,* 126 B.R. 212, 215 (Bankr.D.Md.1991). As a result, the bankruptcy court may properly determine not only the dischargeability of a particular debt but may also enter an appropriate money judgment. *Hallahan,* 936 F.2d at 1508. This gives dischargeability proceedings a "dual nature". *In re Hooper,* 112 B.R. 1009, 1012 (9th Cir.BAP1990). This

duality should not, however, obscure the fact that "the ultimate relief sought is a determination that, as to a particular debt, the creditor is not bound by the injunctive effects of a discharge under section 524(a)." *Id.* Once this determination has been made and judgment entered, the *bankruptcy purpose* for the proceeding has come to an end.

 "[J]urisdiction is the *power* to decide. It must be conferred, not assumed." *Matter of Chicago, Rock Island and Pacific R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986) (emphasis original). Just because a federal court has entered a money judgment does not mean that it also has subject matter jurisdiction over all proceedings designed to turn that judgment into cash. *Peacock v. Thomas,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). *See also Matter of Fed-Pak Systems, Inc.,* 80 F.3d 207 (7th Cir.1996) (bankruptcy court lacked jurisdiction to clarify its prior judgment in an adversary proceeding where the debtor's rights in the property were no longer part of the bankruptcy estate). Bankruptcy jurisdiction is limited by the purpose for which it is given. *Xonics,* 813 F.2d at 131. The bankruptcy court has the undeniable jurisdiction to determine the dischargeability of a debtor's obligations to creditors. In doing so, it may also determine the amount of any nondischargeable debt and enter an appropriate money judgment. Nonetheless, once this is done the court's jurisdictional mission has been fulfilled. Proceedings designed to collect that judgment are not a bankruptcy concern and serve no bankruptcy purpose. They will involve only the successful creditor, the now post-bankruptcy debtor and its post-bankruptcy assets. "[T]here is no reason for the bankruptcy court's jurisdiction to linger." *Xonics,* 813 F.2d at 132.

 Section 1334(b) does not confer the jurisdiction needed to enforce a non-dischargeable money judgment entered against a bankruptcy debtor. *Accord Langella v. Weisz,* 39 B.R. 615, 619 (E.D.N.Y.1984). Bankruptcy jurisdiction over the proceeding lapses when the judgment becomes final. To enforce such a judgment, the plaintiff must

turn to a court whose jurisdiction is more enduring.

Plaintiff's motion for proceedings supplemental will be dismissed.