**In re IMPORT & MINI CAR PARTS, LTD., INC., Debtor.**

**Ward W. MILLER, Appellant/Plaintiff,**

**v.**

**Samuel S. CONTE, Appellee/Defendant,**

**and**

**Samuel S. Conte, Carol S. Conte, Peter Conte, and Cedar Creek Farms, Inc., Garnishee Defendants.**

**No. 1:96–CV–55.**

United States District Court, N.D. Indiana, Fort Wayne Division.

April 9, 1996.

---

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This is an appeal from a decision of the Fort Wayne Division of the United States Bankruptcy Court for the Northern District of Indiana, which was entered on January 5, 1996, in Adv.Proc. No. 88–1084. The appeal was docketed in this court on February 7, 1996. Appellant filed his brief on February 16, 1996, and Appellee filed his brief on March 5, 1996. The parties filed no reply briefs or response briefs, and so this matter is deemed ripe for consideration by this court. For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED.

### STATEMENT OF FACTS

Import & Mini Car Parts, Ltd., Inc. ("Debtor") filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on April 28, 1983. Dcn. p. 1.[1] On March 22, 1989, the case was converted to a Chapter 7 proceeding. *Id.* On September 6, 1990, the bankruptcy court entered judgment

---

1. "Dcn." is a reference to the January 5, 1996 Decision issued by the Bankruptcy Court.

in favor of the bankruptcy trustee and against defendant Samuel S. Conte ("Conte" or "Appellee"), a former principal of the debtor, in the amount of $50,224.81. *Id.* The bankruptcy trustee then assigned this judgment to Ward W. Miller ("Miller" or "Appellant"), as trustee for the benefit of administrative creditors of the bankruptcy estate. *Id.* The bankruptcy court entered a garnishment order against Conte's wages on September 11, 1992, which is still in effect. Appellant's brief p. 3. However, according to the appellant, only about $12,000.00 of this judgment has actually been paid. *Id.* p. 4. Consequently, Miller filed a Verified Motion for Proceeding Supplemental to Execution ("Pro Supp Motion") on June 22, 1995, in which he named Conte and three others as garnishee defendants. Dcn. p. 2. In his motion, Miller asks the bankruptcy court to set aside an allegedly fraudulent transfer by Conte, designed to avoid execution on those assets by Miller. *Id.* Specifically, Miller contends that Conte transferred non-exempt assets into a parcel of real estate in which Conte and his wife hold a one-half interest as tenants by the entirety, with the other one-half interest held by Peter Conte. Pro Supp Motion p. 2. Additionally, Miller alleges that "defendant Cedar Creek Farms, Inc., holds a pretended mortgage against the parcel, to secure a non-existent debt, which mortgage should be voided as fraudulent as to existing creditors." *Id.*

The bankruptcy court, Judge Grant, dismissed the motion, holding that he lacked subject matter jurisdiction to hear the suit. Miller appeals, and it is the single issue of the bankruptcy court's jurisdiction that is presently before this court.

## STANDARD OF REVIEW

■ This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). Furthermore, the Federal Rules of Bankruptcy Procedure provide the applicable standard of review. Rule 8013 states:

On an appeal the district court ... may affirm, modify or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This high standard of review has been followed by district courts. *See, e.g., In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985); *In re Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y. 1984). District courts review factual findings of bankruptcy courts under the "clearly erroneous standard." *Matter of Newman,* 903 F.2d 1150 (7th Cir.1990). The "clearly erroneous" language of the rule tracks the language found in Fed.R.Civ.P. 52(a), and cases construing the standard under 52(a) are equally applicable to bankruptcy cases. *Matter of Louisiana Industrial Coatings, Inc.,* 53 B.R. 464, 467 (E.D.La.1985). The U.S. Supreme Court reaffirmed its longstanding definition of this standard: "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Finally, the standard of review of legal conclusions of a bankruptcy court is *de novo. In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir.1990); *In re Global Western Development Corp.,* 759 F.2d 724, 726 (9th Cir.1985).

## DISCUSSION

The essence of Judge Grant's holding was that "[b]ankruptcy jurisdiction is more circumscribed" than that of the district court, and the jurisdiction conferred on the bankruptcy court by 28 U.S.C. § 1334(b)[2] does not give that court the power to preside over a proceeding unless "there [is] a bankruptcy

**2.** As Judge Grant noted (see Dcn. p. 2), Congress vested bankruptcy jurisdiction in the U.S. district courts through 28 U.S.C. § 1334. It also authorized the district courts to confer that jurisdiction to the bankruptcy judges through 28 U.S.C. § 157. The Northern District of Indiana has done just that through N.D.Ind.L.R. 200.1.

purpose for doing so." Dcn. p. 4. Section 1334(b) governs a bankruptcy court's jurisdiction over proceedings that are beyond the bankruptcy proceeding itself. That section provides, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." At first blush, the broad sounding language of that statute, "arising under ... arising in or related to," might seem to encompass the present case. However, as Judge Grant pointed out, that language, when discussed in relation to a bankruptcy court, has been interpreted by the courts as *not* being as broad and general a grant of ancillary jurisdiction as it may at first seem.

As Judge Grant explained, the phrase "arising under ... arising in or related to" does not mean that the bankruptcy court has jurisdiction to hear any case, however remotely connected to a bankruptcy proceeding it may be:

> "It is the relation of the dispute to estate, and not of party to estate, that establishes jurisdiction." *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). To come within the scope of the court's "related to" jurisdiction, "the plaintiff's claims must affect the estate, not just the debtor." *Matter of Wood*, 825 F.2d 90, 94 (5th Cir.1987). Under the test adopted by the Seventh Circuit, a dispute is related to a case under title 11 only when its resolution affects the property of the estate available for distribution to creditors, the manner in which that property is to be distributed or the administration of the estate. (Citations omitted.) "Overlap between the bankrupt's affairs and another dispute is insufficient...." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989).... Jurisdiction requires something "more than the hovering shadow of an earlier bankruptcy...." *Langella v. Weisz*, 39 B.R. 615, 619 (E.D.N.Y.1984).

Dcn. p. 3.

As to the present case, Judge Grant held that:

> [i]t is, in reality, nothing more than a garden variety fraudulent conveyance ac-

tion, governed by state law, brought by a creditor in an effort to collect an outstanding debt. Its only connection with the bankruptcy court is that the debt in question happens to be represented by a judgment which this court issued in favor of a bankruptcy trustee. This, however, is not enough. The bankruptcy trustee no longer owns that judgment. It passed out of the estate when it was assigned to Mr. Miller. Once the judgment left the estate, the court needs a new source of jurisdiction if further disputes involving it are to remain in federal court.

Dcn. pp. 4–5 (citations omitted).

The appellant argues that the bankruptcy court does indeed have jurisdiction to hear the present suit, since jurisdiction to enforce its own orders is inherent, and necessary in order for the court to function properly. In support of this position, appellant cites the case of *Riggs v. Johnson County*, 73 U.S. 166, 18 L.Ed. 768 (1868), wherein the Supreme Court recognized the ancillary or supplemental jurisdiction of the federal courts, holding that "process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment." Appellant's brief p. 11 (quoting *Riggs*, 73 U.S. at 187). Appellant also states that "[a]fter a judgment, [the bankruptcy court] has the continuing ancillary jurisdiction to enforce ... [a] judgment." Appellant's brief p. 22 (citing *Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995)). Indeed, the U.S. Supreme Court recently wrote that:

> We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. Without jurisdiction to enforce a judgment entered by a federal court, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Riggs v. Johnson County*, 6 Wall. 166, 187, 18 L.Ed. 768 (1868). In defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus,

garnishment, and the prejudgment avoidance of fraudulent conveyances."

*Peacock v. Thomas,* —— U.S. ——, ——, 116 S.Ct. 862, 868, 133 L.Ed.2d 817 (1996).

In his decision, Judge Grant noted in a footnote on page five, referring to the *Vukadinovich* case, that the issue of a district court's subject matter jurisdiction over garnishment actions against third parties "has been laid to rest in the Seventh Circuit." That statement was correct at the time it was written. However, in *Peacock v. Thomas* (decided on February 21, 1996, about six weeks after Judge Grant's decision in the present case), the U.S. Supreme Court addressed the issue of third party liability for existing federal judgments. In *Vukadinovich* the circuit court held that a district court's ancillary jurisdiction extended "to a garnishment proceeding brought against a nonparty to the original proceeding." 59 F.3d at 62. The court went on to state (and this passage is quoted by Miller in support of his argument in the case at bar) that "[g]arnishment is a standard, often essential, step in the collection of a judgment, and the party holding the judgment ... ought to be able to take this step without having to start a new lawsuit in a different court system." *Id.* Based on that reasoning, the Seventh Circuit permitted the successful defendants in a frivolous civil rights action to bring a garnishment action against the plaintiff's employee for recovery of defendants' legal fees. Also in *Vukadinovich,* the court recognized that there was a split in the circuits over the issue of whether a district court's ancillary jurisdiction extended that far. The court wrote that "[t]he Supreme Court may resolve the issue in *Thomas,* but we doubt that it will hold that garnishment proceedings are outside the supplemental jurisdiction." *Id.* Obviously, the Seventh Circuit's prognostication was correct, insofar as it went, in that the Supreme Court reiterated that ancillary jurisdiction extended to a "court's inherent power to enforce its judgments" through many methods, including garnishment. *Thomas,* —— U.S. at ——, 116 S.Ct. at 868. Despite that language, the Supreme Court went on to state that "[w]e have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* Therefore, the Supreme Court reversed the court of appeals decision to permit a former employee, who had obtained a judgment against his employer in an underlying ERISA action, to bring an action against an officer of the employer once the judgment creditor discovered that he would be unable to recover from the corporation itself because the officer had allegedly shielded some of the company's assets from that judgment. The Supreme Court held that "[i]n determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original' ... or where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Id.* at ——, 116 S.Ct. at 869.

In *Riggs,* on which appellant relies, the Supreme Court "permitted a judgment creditor to mandamus county officials to force them to levy a tax for payment of an existing judgment.... The order ... merely required compliance with the existing judgment by the persons with authority to comply. We did not authorize the shifting of liability for payment of the judgment from the judgment debtor to the county officials...." *Id.* at —— —— —— 116 S.Ct. at 868–69. Therefore, the Supreme Court held that the district court's ancillary jurisdiction did not extend so far as to allow Thomas, the judgment creditor, to impose liability on a party not previously before the court and who was not previously liable for that judgment.

■ Appellant would no doubt argue that the present case is distinguishable from *Thomas,* in that appellant is not attempting to shift liability for the judgment to a third party, but rather, is merely seeking to enforce his judgment by bringing this action to void fraudulent conveyances. Appellant would find some support for this argument in footnote 6 of the *Thomas* opinion. In that footnote, the Supreme Court noted that *amicus curiae* for Thomas argued that Thomas' suit was indistinguishable from the *Riggs* case in that "it was intended merely as a

supplemental bill to preserve and force payment of the [underlying] judgment by voiding fraudulent transfers of [the judgment debtor's] assets." *Id.* at ——, 116 S.Ct. at 868. The Court stated, however, that "[w]e decline to address this argument, because, even if Thomas could have sought to force payment by mandamus or to void post-judgment transfers, neither Thomas nor the courts below characterized this suit that way. Indeed, Thomas expressly rejects that characterization of his lawsuit. Brief for Respondent 4 ('This action ... is not one to collect a judgment, but to establish liability on the part of the Petitioner')...." *Id.* While Miller could argue that his suit is likewise "intended merely as a supplemental bill to preserve and force payment" of his judgment against Conte, the fact is that he is, at the same time, attempting to impose liability on nonparties to the underlying action, namely Carol Conte, Peter Conte, and Cedar Creek Farms, Inc.

In any case, even if Miller's action is determined to be distinguishable from the situation in *Thomas*, appellant's argument remains unpersuasive. As Judge Grant explained, the argument that the bankruptcy court can entertain this action because of its ancillary jurisdiction to enforce its own judgments and settle disputes "related to" a bankruptcy proceeding ignores the "fundamental differences between the jurisdiction conferred by § 1334(b) and other grants of federal jurisdiction." Dcn. p. 5. As Judge Grant pointed out, the *Riggs* case, on which appellant bases his argument, addressed the jurisdiction of the federal district courts. However, wrote Judge Grant:

> The district court's jurisdictional mandate is to give the parties before it complete relief. *John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457, 461 (7th Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 523 [99 L.Ed. 751] (1955). Its ability to do so "would be incomplete and entirely inadequate," *Riggs*, 73 U.S. at 187, for this purpose unless it also had the power to enforce its judgments. Bankruptcy jurisdiction is more circumscribed. It "is designed to provide a single forum for dealing with all claims to the bankrupt's

assets." *Xonics*, 813 F.2d at 131. Once this jurisdictional mission has been fulfilled, the jurisdiction conferred by § 1334(b) comes to an end.

■ In contrast to a district court's jurisdiction, "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved." *Xonics*, 813 F.2d at 131. "There is jurisdiction under § 157(c)(1) only when the dispute is 'related to' the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors." *Id.* (citations omitted). In the present case, the dispute in no way impacts the property of the bankrupt estate, nor does it involve a dispute over any of the estate's assets. Rather, as Judge Grant noted, "[t]he issues raised by the motion for proceedings supplemental and its associated request to set aside an allegedly fraudulent conveyance are separate and distinct from the issues which resulted in the judgment against the defendant and are based on events which allegedly occurred more than two years after the judgment was rendered. They are issues governed entirely by state law, involving parties who were not previously before the court." Dcn. p. 6, n. 3. As stated earlier, the judgment at issue in this case is no longer property of the estate. It left the estate when it was sold to Miller, and bankruptcy "jurisdiction does not follow the property. It lapses when the property leaves the estate." *Xonics*, 813 F.2d at 131 (citing *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182 (7th Cir.1986)).

Judge Grant also cited the case of *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir.1994) to further explain his decision. In *Zerand–Bernal*, the plaintiff company purchased the debtor company's assets. Several years later, an individual brought a products liability suit against Zerand–Bernal after he was injured when his hand got caught in a machine that had been manufactured by the debtor company and sold by the debtor to the injured man's company. The injured

man claimed that under the law of Pennsylvania, wherein his suit was brought, Zerand–Bernal was a proper defendant based on the state's doctrine of successor liability. Zerand–Bernal filed an adversary proceeding in the bankruptcy court, asking the court to reopen the bankruptcy and enjoin the plaintiff in the products liability suit from maintaining that action. The ground for the relief sought in the bankruptcy court was the express reservation of jurisdiction by the bankruptcy court to enjoin any product liability suits brought against *Zerand–Bernal*. This reservation of jurisdiction appeared in the orders approving the sale of the debtor's assets. However, notwithstanding this reservation, the bankruptcy court held that it did not have jurisdiction over the proceeding, and the district court affirmed. The Seventh Circuit affirmed, holding that:

> The bankruptcy jurisdiction of the district courts (including therefore that of the bankruptcy courts, which exercise powers delegated to them by the district courts, 28 U.S.C. § 157(a), (b)) extends to "all civil proceedings arising under title 11 [of the U.S. Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Taken at its full breadth, this language would allow the bankruptcy court to do what Zerand wants, since the adversary complaint that Zerand filed in the bankruptcy court relates to the bankruptcy sale at which it acquired [the debtor's] assets and thereby exposed itself, it turns out, to the [products liability] suit. But the language should not be read so broadly. The reference to cases related to bankruptcy cases is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that; were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.... The fact that a claim has a distant federal origin does not confer "arising under" jurisdiction.

*Zerand–Bernal*, 23 F.3d at 161–162 (citations omitted).

In the present case, as Judge Grant explained, the resolution of the dispute between Miller and Conte regarding an alleged fraudulent conveyance by the latter does not in any way impact the property of the bankruptcy estate that would be available for creditors. It does not involve a claim by or against the debtor, nor does it deal with a claim "to the bankrupt's assets." *Xonics*, 813 F.2d at 131. What is present in this case is nothing more than "the hovering shadow of an earlier bankruptcy." *Langella*, 39 B.R. at 619. Neither the parties to this suit nor the facts behind it are related to the underlying bankruptcy proceeding in a manner that would sustain the court's jurisdiction under 28 U.S.C. § 1334(b).

Appellant also argues that the recent case of *Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th Cir.1995) permits a bankruptcy court to retain jurisdiction in some instances where doing so would serve judicial economy and convenience of the parties. In fact, Judge Grant discussed *Chapman* in his decision, acknowledging that:

> In certain circumstances, however, the bankruptcy court has the discretion to retain jurisdiction, because the litigation [h]as progressed to such a point that the interests of all concerned are better served by allowing the proceeding to be concluded in the court where it all began. The factors considered in deciding how to exercise this discretion include: judicial economy, convenience to the parties, fairness and comity.... The Seventh Circuit has recently adopted this position.

Dcn. p. 6, n. 3 (citing *In re Porges*, 44 F.3d 159, 163 (2nd Cir.1995) and *Chapman*, 65 F.3d 78).

In *Chapman*, the debtor-in-possession brought an adversary proceeding against a creditor whom the debtor claimed owed him $200,000.00. The debtor brought the action in the bankruptcy court, but based his claim on a default judgment he had obtained in state court. The bankruptcy court dismissed the proceeding, based on its determination that the debtor's alleged state court judgment was unenforceable. The debtor appealed that dismissal to the district court, which relinquished jurisdiction on jurisdictional

grounds and sent the debtor back to the state courts. The issue in the case was whether or not the district court properly relinquished jurisdiction over the adversary proceeding after the bankruptcy proceeding itself had been dismissed. The Seventh Circuit held that the district court was within its discretion to relinquish jurisdiction where the underlying bankruptcy proceeding had been dismissed and there was "not even a remote federal interest" in the remaining adversary proceeding. 65 F.3d at 82. Appellant argues that *Chapman* stands for the proposition that the bankruptcy court can relinquish jurisdiction over an adversary proceeding *only* prior to judgment and not after. Appellant's brief p. 6. In contrast, argues appellant, the current judgment was entered in 1990, and so the bankruptcy court has no choice but to retain jurisdiction. The Seventh Circuit in *Chapman* held that a federal court could relinquish jurisdiction over an ancillary proceeding "that is not yet concluded when the bankruptcy proceeding out of which it arose ends." 65 F.3d at 80. However, accepting appellant's interpretation of *Chapman* to mean that a bankruptcy court can never relinquish jurisdiction once it has entered judgment in an adversary proceeding would overrule the entire line of cases regarding a bankruptcy court's ancillary jurisdiction, as set out in detail in Judge Grant's decision and discussed previously in this Order. Nowhere in the *Chapman* opinion does the Seventh Circuit purport to paint with such a broad brush.

In any case, Judge Grant wrote that even "[i]f jurisdiction over the present dispute is a matter of discretion, analyzed by the same standards used to consider whether or not the bankruptcy court should retain jurisdiction over a particular controversy once the underlying bankruptcy case is dismissed, the court would relinquish jurisdiction." The issues raised by the motion ... and its associated request to set aside an allegedly fraudulent conveyance are separate and distinct from the issues which resulted in the judgment against the defendant and are based on events which allegedly occurred more than two years after the judgment was rendered. They are issues governed entirely by state law, involving parties who were not previous-

ly before the court." Dcn. p. 6, n. 3. Judge Grant also found that "considerations of judicial economy do not favor retaining jurisdiction," since this action to collect a judgment had not advanced nearly to the point where relinquishment would work a hardship on the parties. *Cf. In re Porges,* 44 F.3d 159 (2nd Cir.1995) (court retained jurisdiction over adversary proceeding between Chapter 13 debtor and a creditor even though bankruptcy case had been dismissed, where dispute had already been tried and court was merely awaiting the filing of conclusions of law and findings of fact in order to enter judgment).

Miller also cites the case of *In re Statistical Tabulating Corp.,* 60 F.3d 1286 (7th Cir. 1995) in support of his argument that the bankruptcy court's ancillary jurisdiction extends to his pro supp motion. The court in *Statistical* held that an appeal of an order of the bankruptcy court survived even when the bankruptcy case itself was dismissed while the appeal was pending. However, as explained in *Chapman,* the appeal in *Statistical* "did not survive by virtue of the 'related to' jurisdiction.... The order had not been made in an adversary proceeding. It was an order turning over to one of the creditors the proceeds of the liquidation of the debtor's estate, and it was contested by another creditor, who claimed priority. *The dispute went to the heart of the bankruptcy,* and so the bankruptcy court would not have been entitled to fob it off on the state courts...." *Chapman,* 65 F.3d at 82 (italics added). As Judge Grant pointed out repeatedly, the present action fails to fall under the bankruptcy court's ancillary jurisdiction since it clearly does not go to the heart of the underlying bankruptcy, but merely has a remote connection to it, something akin to a distant cousin once removed.

 In the second prong of his argument in support of the bankruptcy court's jurisdiction over this matter, Miller argues that his judgment cannot be enforced anywhere but in the bankruptcy court from which it sprang, and that he has no recourse to the Indiana state courts. Judge Grant wrote that "[f]ederal judgments are entitled to the same full faith and credit given to judgments of other states." Dcn. p. 7 (citing *Fidler v.*

*Gilchrist,* 60 Ind.App. 363, 109 N.E. 796 (1915)). Appellant argues that "[t]he Bankruptcy Court ... errs in holding that federal judgments are entitled to 'full faith and credit' in Indiana; full faith and credit is only required in Indiana to the 'judicial proceedings of every other state....' United States Constitution, Article IV, Section 1, and, by 28 U.S.C. § 1738, to the judicial proceedings of states in the federal courts. Indiana courts may respect federal judgments and grant them comity or preclusive effect under standardized principles of jurisprudence. Or the state courts may not do that, which is the very reason federal courts enforce their own judgments." Appellant's brief p. 14. It is true, as appellant points out, that the wording of the Article IV, § 1 of the U.S. Constitution refers to each state's duty to give full faith and credit to the "judicial Proceedings of every other State." It is also true that "under the Full Faith and Credit Act [i.e., 28 U.S.C. § 1738] a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *see also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380–81, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). However, appellant is either unaware of or ignoring a line of U.S. Supreme Court holdings regarding the applicability of the Full Faith and Credit Clause to the state courts. As the Seventh Circuit wrote just last year, "[a]lthough 28 U.S.C. § 1738, which implements the Full Faith and Credit Clause of the Constitution for federal litigation, does not in terms apply to the states, the Supreme Court of the United States has long assumed that state tribunals must give federal judgments the same force that federal courts give them." *Matter of Cook,* 49 F.3d 263, 266 (7th Cir.1995) (citing *Dupasseur v. Rochereau,* 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1874); *Embry v. Palmer,* 107 U.S. 3, 27 L.Ed. 346 (1883); *Metcalf v. Watertown,* 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861 (1894); *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)). Also, the case of *Fidler v. Gilchrist,* cited by Judge Grant, held that the judgments of a federal court "sitting in a

particular state are to be accorded such effect in the courts of that state as would be accorded in similar circumstances to the judgments and decrees of state tribunals of equal authority." 109 N.E. at 797.

Appellee also cites I.C. 34–1–18–7, which is Indiana's codification of the Full Faith and Credit Clause, and which states:

> The records and judicial proceedings of the several courts of record, of or within the United States or the territories thereof shall be admitted in the courts within this state as evidence, by attestation or certificate of the clerk or prothonotary, and the seal of the court annexed, together with the seal of the chief justice or one or more of the judges, or the presiding magistrate of any such court, that the person who signed the attestation or certificate was, at the time of subscribing it, the clerk or prothonotary of the court, and that the attestation is in due form of law; and the records and judicial proceedings, authenticated as aforesaid, shall have full faith and credit given to them in any court within this state, as by law or usage they have in the courts whence taken.

■ It is true, of course, that a federal court's *interpretation* of Indiana law is merely persuasive, rather than binding, authority on the state courts. *See Jones v. American Family Mut. Ins. Co.,* 489 N.E.2d 160 (Ind. App.1986). This doctrine is the mirror image of 28 U.S.C. § 1738 and, together, they recognize that the state courts are the proper forum for the final interpretation of state law. Perhaps it is this doctrine to which appellant intended to refer when he argued that the judgment of the bankruptcy court would be of no moment in the state courts. Even so, his argument still falls flat, since this is clearly not the issue in the present case. This doctrine applies only when an Indiana court is deciding what precedential weight should be accorded a prior federal decision that interpreted Indiana law. This matter does not concern the bankruptcy court's interpretation of state law, which, it is true, would not be binding on a state court in a state proceeding. All that is involved here is a judgment creditor's attempt to collect his judgment. The bankruptcy court had origi-

nal, exclusive jurisdiction, of course, over the bankruptcy estate at the time it entered the judgment against Conte. *Otte v. Otte,* 655 N.E.2d 76, 83 (Ind.App.1995). That judgment was entered by the bankruptcy court pursuant to its inherent power to enter orders dealing with the distribution of assets of the bankruptcy estate. Those powers are conferred upon the court by 11 U.S.C. § 105, which is a section under the General Provisions of Chapter 1 of Title 11 and which states, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. . . ." 11 U.S.C. § 105(a). It is well established that this section confers on a bankruptcy court the "broad, but not unlimited power to enter orders which are 'necessary or appropriate to carry out provisions' of the Bankruptcy Code." *Lerch v. Federal Land Bank of St. Louis,* 94 B.R. 998 (N.D.Ill.1989).

▪ Miller also claims in his brief that the bankruptcy court should retain jurisdiction since "transfer of [the] judgment to Indiana courts [is] impossible." Appellant's brief p. 13. Miller further states that "[t]here is no federal or state mechanism for the transformation of federal judgments into state judgments. . . ." *Id.* Consequently, Miller argues, his federal judgment can *only* be enforced in the court in which it was entered. However, as appellee points out, copies of judgments or proceedings of other courts are admissible in evidence in the state courts of Indiana under I.C. § 34–1–17–3. Appellee's brief pp. 13–14. More importantly, as Judge Grant instructed in his decision, the Indiana Code also contains a provision that states, in relevant part:

> (d) A person interested in any judgment for money or costs that has been rendered by any Indiana state court, or by any federal court of general original jurisdiction sitting in Indiana, may have the judgment entered upon the circuit court judgment docket. . . .

I.C. § 33–17–2–3(d). Once such judgment is duly docketed, it can be enforced pursuant to the broad powers granted to the state courts under Indiana Trial Rule 69.

Finally, appellant claims that the bankruptcy court made three findings of fact that are clearly erroneous. The court will address these findings briefly, even though they appear to be largely irrelevant and immaterial. The first two findings are found in a passage at the end of Judge Grant's decision, wherein he wrote that "[a]ny assets that may become available for satisfaction of the judgment will come from the judgment debtor and/or the garnishee defendants, not from the bankruptcy estate. In the same fashion, *any recovery will inure solely to the benefit of Mr. Miller,* as trustee under the assignment, not the bankruptcy trustee or the bankruptcy estate. *Enforcement of the court's judgment will have neither benefit nor detriment to the bankruptcy estate or the creditors who will share it. . . .*" Dcn. pp. 7–8 (italics added). Appellant argues that the passages in italics constitute clearly erroneous findings, since while a portion of any recovery will go to appellant, most will benefit creditors who filed administrative claims against the bankruptcy estate. This court agrees with the appellee that Judge Grant's "finding" was simply that any recovery by Miller would not benefit the bankruptcy estate or the bankruptcy trustee, which is clearly true. Any recovery obtained would be paid to Miller, and then, through him, a portion would be distributed to the creditors he represents. This would all occur outside the bankruptcy estate and would not involve supervision of the bankruptcy court. One could argue, perhaps, that these two "findings" were inartfully phrased, but this court does not find them to be clearly erroneous.

Finally, appellant argues that Judge Grant made a clearly erroneous finding when he wrote that "no proceedings of any substance have been conducted with regard to the issues raised by the [appellant's] motion; so considerations of judicial economy do not favor retaining jurisdiction." Dcn. p. 6, n. 3. Appellant argues that "[t]he present proceeding supplemental motion entailed investigations, third party discovery conducted by counsel, a title search, the expense and delay of a newspaper publication notice of an *in rem* summons against a non-resident defendant, . . . two discovery depositions, briefing, and seven months delay." Appellant's brief

p. 19. Appellee responds that "[t]he efforts of the Judgment Assignee ... were relatively minimal compared to the situation where a matter had been fully litigated, hearings conducted, briefs filed, etc." Appellee's brief p. 18. Appellee also points out that the bankruptcy court's reference to "no proceedings of any substance" was most likely based on the information contained on that court's own docket, which admittedly would not contain notations regarding every effort of the appellant which took place after the assignment. While Judge Grant may not have been aware of each and every action taken by appellant, it is also true that the tasks in which appellant has allegedly engaged would appear to be necessary and proper in the pursuit of the collection of a judgment. This would be true regardless of the forum in which he was attempting to enforce his judgment. In light of these facts, this court finds that this particular finding by the bankruptcy judge was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the January 5, 1996 Decision of the United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, is AFFIRMED.