In re John McALLISTER, Debtor.

HOC, INC., Plaintiff,

v.

John R. McALLISTER, Defendant.

Bankruptcy No. 95–03468–BGC–7.
Adversary No. 95–00419.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Jan. 26, 1998.

Wayne Wheeler, Birmingham, AL, for Plaintiff.

Leo Costello, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION ON WRIT OF GARNISHMENT

BENJAMIN COHEN, Bankruptcy Judge.

### I. Findings of Fact

On April 16, 1997, this Court entered an $84,835.60 non-dischargeable judgment against the defendant and in favor of the plaintiff. On June 19, 1997, the plaintiff began to collect that judgment by filing a writ of garnishment in this Court pursuant to Code of Ala. 1975, § 6–6–390. In response, the clerk of this Court issued a writ of garnishment against the garnishee, Infinity of Charlotte, North Carolina at 9103 East Independence Boulevard, Matthews, North Carolina. Infinity has not, however, answered the writ of garnishment or otherwise entered an appearance in this proceeding.[1]

The plaintiff's writ of garnishment provides a North Carolina address for Infinity of Charlotte. There is no indication from either the writ or the plaintiff's motions that Infinity is a resident of the state of Alabama or conducts business in or otherwise has any contacts with this state. But in response to

---

1. There are technically three matters before the Court. Those are the plaintiff's *Motion for Entry of Judgment Against Garnishee,* proposed order for *Conditional Judgment Against Garnishee* and *Motion for Entry of Conditional Judgment Against Garnishee.* The posture of those pleadings is explained in note 3 below.

the garnishee's failure to answer or appear, the plaintiff requested this Court, pursuant to Code of Ala. 1975, § 6–6–457, for a conditional judgment against Infinity.[2]

In response to the plaintiff's actions, the defendant's North Carolina attorney, Mr. David R. Badger, wrote the plaintiff's attorney to explain (because the defendant is now a resident of North Carolina and works for the garnishee) the limited susceptibility of personal wages to garnishment under North Carolina law, and also to suggest that the plaintiff must domesticate its Alabama judgment in North Carolina, and then file and pursue its garnishment in the North Carolina courts. The defendant's attorney filed a copy of his letter with this Court.[3]

**2.** Section 6–6–457 provides:
 If the garnishee fails to appear and answer, a conditional judgment must be entered against him for the amount of the plaintiff's claim, as ascertained by his judgment, to be made absolute unless he appears within 30 days after notice of the conditional judgment issued by the clerk, to be served on him, as other process, by the sheriff. If he fails to appear within the time required by the notice served upon him or if two notices are returned "not found" by the sheriff of the county in which the garnishment was executed, the judgment must be made absolute.
 Code of Ala. 1975, § 6–6–457.

**3.** The procedural posture of this case is somewhat confusing and requires clarification. The plaintiff filed a pleading entitled "Motion for Entry of Judgment Against Garnishee" on August 4, 1997. That motion was set for hearing by the plaintiff and was heard on August 18, 1997. *In that hearing this Court, with reservation, represented to the plaintiff's attorney that if he would prepare an order granting the motion that this Court, for whatever effect it would have, would sign the order. After that time, this Court took the plaintiff's motion under advisement (and obviously has since, found legal support for its gut feeling that to sign any such order would be in error).* On August 25, 1997, the plaintiff's attorney indeed submitted a proposed "Conditional Judgment Against Garnishee", but, at the same time, filed a "Motion for Entry of Conditional Judgment Against Garnishee, to Infinity of Charlotte (Infiniti c/o John Freeman)". The plaintiff's attorney included with the proposed conditional judgment and the second motion a letter in which he requested that the conditional judgment be entered and that the matter be set for the garnishee to show cause why a final judgment should not be entered against it. The second motion was not set for hearing because the prior motion requesting the same relief had been heard and was under consideration by the Court, and because the plaintiff's attorney did not re-

## II. Conclusions of Law

### A. No Writ of Garnishment May Proceed Absent Proper Service

Before this Court may grant any conditional judgment and issue an order to show cause why that judgment should not be made final, it must be made to appear that proper service of the garnishment writ has been made on the garnishee under Fed.R.Bankr.P. 7004.

According to the plaintiff's *Motion for Entry of Conditional Judgment Against Garnishee*, the garnishment writ issued by the clerk of the bankruptcy court was served by the United States Marshal on the garnishee on July 26, 1997. However, as is apparent from the record in this case, there are at least two problems that preclude a determi-

quest for it to be set for hearing, but rather that a conditional judgment be entered and the matter be set for hearing on a final judgment. And, of course, this Court could not set this matter for a final judgment without first determining the propriety of entering the conditional judgment requested in the first motion.

On October 27, 1997, the plaintiff's attorney filed a second letter, this time requesting that the second motion for conditional judgment be set for oral argument, and indicating to the Court that both the debtor/defendant and the garnishee are represented by North Carolina counsel.

The Court is not aware of the reasons why the plaintiff requires oral argument on a motion that has already been heard, and as to why a second motion seeking conditional judgment would be filed when the first motion seeking that same relief has already been heard and submitted for determination, and was in fact being considered when the second motion was filed. It appears that this entire matter is properly before this Court for disposition by virtue of the hearing on the first motion, and is properly disposed of by disposition of the original motion filed by the plaintiff, and upon *this Court's sua sponte determination regarding its lack of subject matter jurisdiction to hear that motion.* However, the Court wishes to accord the plaintiff all due process and does not wish to preclude the plaintiff from presenting its cause in this Court. As a result, this Court will of course provide the plaintiff with an additional hearing and consider any arguments by the plaintiff's attorney on any of the issues raised or disposed of by this order, if upon considering this order, the plaintiff's attorney finds it appropriate to file a motion to reconsider, and in fact files such a motion.

As far as the Court's representations at the August 18, 1998 hearing concerned, the lack of jurisdiction the Court has over these matters destroys any ruling resulting from those representations. See note 10 below.

nation that proper service has been made on the garnishee.

■ First, Fed.R.Civ.P. 4(1), made applicable to bankruptcy proceedings by Bankruptcy Rule 7004(a), requires a person making service to make proof of service to the court. There is no such proof of service in this case. And while Civil Rule 4(h) also provides that the "[f]ailure to make proof of service does not affect the validity of the service," this Court may not, absent proof of service, render a conditional judgment against the garnishee.

■ Second, Fed.R.Civ.P. 4(h)(1), made applicable to bankruptcy proceedings by Bankruptcy Rule 7004(a), requires that service on a corporation, partnership or other unincorporated association that is subject to suit under a common name be made by delivering the process being served "to an officer, a managing or general agent, or to any other agent authorized by appointment or by law

to receive service of process...." The garnishee in this case is not, according to the plaintiff's writ of garnishment and motion for conditional judgment, an individual but instead falls within the category of entities described under Fed.R.Civ.P. 4(h)(1).[4] Because, the garnishment writ does not direct that service be made on any named person and no person is named in the writ as the garnishee's officer, managing or general agent, or agent authorized by appointment or by law to receive service of process, absent proof that the garnishment writ was actually served on a named person who is authorized by subdivision (h)(1) to be served on behalf of the garnishee, this Court may not enter a conditional judgment against the garnishee.[5]

## B. No Writ of Garnishment May Proceed Absent Jurisdiction

This Court has no jurisdiction over the plaintiff's garnishee unless there is some pro-

---

4. Even if the writ of garnishment has been properly served, the debtor's attorney's letter raises important issues regarding the subject matter jurisdiction of this Court, and the power of this Court, upon entering a judgment, to subject property located outside of its territorial boundaries to the payment of that judgment, by garnishment or other similar process. And even if that letter is not the proper means by which those issues should be raised, it is axiomatic that any Court, on its own volition, may raise and determine questions which underlie its jurisdiction (which this Court has done herein) to hear or determine a particular matter, or raise questions that certain matters should be heard and determined by another tribunal.

5. Two more difficult legal issues concerning the validity of the service made by the United States Marshal would remain even if a return of service had been filed by the Marshal showing that service of the garnishment writ has been made on the appropriate officer or agent of the garnishee. Fed.R.Civ.P. 4(c)(2) provides that "[s]ervice may be effected by any person who is not a party and who is at least 18 years of age. At the request of the plaintiff, however, the court may direct that service be effected by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the court for the purpose." Also, Fed.R.Civ.P. 4.1 authorizes service by the United States marshal of process other than a summons or a subpoena. Bankruptcy Rule 7004 makes applicable to proceedings in bankruptcy subdivisions(a), (b), (c)(1), (d)(1), (e)–(j) and (m) of Fed.R.Civ.P. 4, none of which refer to or authorize a court to direct service by the United States marshal. It does not

make either subdivision (c)(2) of Fed.R.Civ.P. 4 or Fed.R.Civ.P. 4.1 applicable to bankruptcy proceedings, but instead provides simply that "[p]ersonal service may be made by any person at least 18 years of age who is not a party, and the summons may be delivered by the clerk to any such person." If service of bankruptcy process by a United States marshal is not authorized by the Bankruptcy Rules, which control the service of process in bankruptcy proceedings, was the service, if any, made by the United States Marshal in this case, effective to provide this Court with jurisdiction to grant a conditional judgment against the garnishee? Even if subdivision (c)(2) was applicable to bankruptcy proceedings, no request was made by the plaintiff for an order directing that service be made by the United States marshal and no such order has been made in this proceeding. Was the service, if any, made by the United States Marshal in this case, effective to provide this Court with jurisdiction to grant a conditional judgment against the garnishee, considering the fact that no court order exists authorizing or directing service of the garnishment process by a United States marshal, as is required by subdivision (c)(2)?

Because this garnishment proceeding will be dismissed for other reasons stated in this opinion, it is unnecessary to discuss and decide the issues regarding the efficacy of service, if any, made by the United States marshal in this case. "Sound judicial policy counsels against deciding complicated legal issues where a clear, principled alternative basis for reaching the same result exists." *TI Federal Credit Union v. DelBonis*, 72 F.3d 921, 927 (1st Cir.1995).

cedural mechanism for exercising that jurisdiction. As expressed below, in the context of this proceeding, there is none; however, if there were, as discussed below, it would exist in either Rule 69 of the Federal Rules of Civil Procedure (containing the procedure for enforcing money judgments in bankruptcy courts) or Rule 7004 of the Federal Rules of Bankruptcy Procedure (containing the rules of process service in bankruptcy proceedings).

### 1. Civil Procedure Rule 69

■The sole federal statutory framework for enforcing money judgments entered by bankruptcy courts is found in Rule 69 of the Federal Rules of Civil Procedure, Fed. R.Civ.P. 69, applicable to this proceeding through Bankruptcy Rule 7069. Fed. R.Bankr.P. 7069. Civil Rule 69(c) provides that:

> [t]he procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed.R.Civ.P. 69.

Clearly this rule offers no specific procedure for exercising jurisdiction but is helpful to the extent that it resolves any conflicts between state law and federal law collection procedures (an issue that has some peripheral connections to this matter). Consequently, Rule 69 is of no assistance to the plaintiff. See notes 12, 13 and 14 below.

### 2. Bankruptcy Rule 7004

■ Bankruptcy Rule 7004 severely limits a bankruptcy court's in personam jurisdiction through enactment of the recently added subsection (f). And because Bankruptcy Rule 7004 is the only rule of process service available in bankruptcy proceedings, there are no exceptions to those subsection (f) limitations.[6]

■ Subsection (f) of Rule 7004, became effective on December 1, 1996.[7] It provides:

---

**6.** If Rule 7004 is not the proper vehicle for service of the writ of garnishment in this case, there is no other. No other federal rule provides for service in bankruptcy matters and state court rules may not be used See *United States v. St. Paul Mercury Insurance Co.*, 361 F.2d 838 (5th Cir.1966) where the Court of Appeals for the Fifth Circuit held that the qualifying language of Rule 69 ("except that any statute of the United States governs to the extent that it is applicable" Fed.R.Civ.P. 69) that the federal rules of procedure, not state rules, govern service of writs of garnishment in proceedings in federal courts.

**7.** See the order of the Supreme Court of the United States adopting amendments to the Federal Rules of Bankruptcy Procedure dated April 23, 1996. *C.I.R. v. Lundy*, 516 U.S. 235, 246–48, 116 S.Ct. 647, 654, 133 L.Ed.2d 611 (1996).

The debtor/defendant's bankruptcy case was filed on June 15, 1995. This adversary proceeding was filed on September 15, 1995. Final judgment against the defendant was entered in this adversary proceeding on April 16, 1997. The debtor's appeal of that judgment to the district court was dismissed on May 12, 1997. And the present garnishment proceeding was filed on June 19, 1997.

The order of the Supreme Court which added the new subdivision (f) to Bankruptcy Rule 7004 provided that the subdivision would become effective on December 1, 1996, and that it "shall govern all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings in bankruptcy cases then pending." See the order of the Supreme Court of the United States dated April 23, 1996 adopting amendments to the Federal Rules of Bankruptcy Procedure, 116 S.Ct. 654 (1996). Since this garnishment proceeding was commenced on June 19, 1997, well after the date the amendments to Rule 7004 became effective, it is governed by the new subdivision (f).

Even if, however, the appropriate date for determining the applicability of the new subdivision was September 15, 1995, the date this adversary proceeding was filed by the plaintiff, the new subdivision would still govern. The order implementing the subdivision provides for its applicability to proceedings in bankruptcy pending on December 1, 1996, "insofar as just and practicable." Because the garnishment portion of the adversary proceeding was not instituted until long after December 1, 1996, the plaintiff cannot said to have detrimentally relied on the previous version of the rule in filing, serving or prosecuting the garnishment. Courts have generally acknowledged that application of rules amendments to activities which have occurred in pending proceedings well after the effective date of the amendments results in no injustice. See *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 n. 32 (11th Cir.1997) (amendments to federal rules of civil procedure relating to discovery governed discovery and motion for sanctions relating to discovery in action that had been pending for 7 months prior to the

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 Fed. R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding *arising under* the Code, or *arising in* or *related to* a case under the Code.

Fed.R.Civ.P. 7004(f)(emphasis added).

█ Pursuant to this new subdivision, service of process in bankruptcy adversary proceedings is effective to bestow in personam jurisdiction only in cases filed under Title 11, and civil proceedings arising under the Bankruptcy Code, or arising in or related to a bankruptcy case. Those terms, "arising under," "arising in," or "related to," refer to the forms of bankruptcy jurisdiction granted to federal courts by 28 U.S.C. § 1334. **Therefore, in personam jurisdiction may be exercised in this case over the North Carolina garnishee by virtue of service made in accordance with Bankruptcy Rule 7004** *only* **if this Court has** *"arising under," "arising in,"* **or** *"related to "* **subject matter jurisdiction over this garnishment proceeding pursuant to 28 U.S.C. § 1334(b).**[8] See notes 12, 13 and 14 below.

effective date of the amendments, where the vast majority of discovery related motions and all hearings and court orders relating to discovery came after the amendments became effective); *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir.1997) (amendment to Fed.R.Civ.P. 11 governed motion for sanctions made a year after amendments became effective even though primary action in which motion was made had been pending well before the effective date of the amendments) cert. denied, —— U.S. ——, 118 S.Ct. 687 (U.S.1998). Indeed, the courts of appeals have readily applied amendments retroactively to govern proceedings already accomplished at the trial level. "[T]o the maximum extent possible, the amended Rules should be given retroactive application." *Atlantis Development Corp. v. United States*, 379 F.2d 818, 823 (5th Cir.1967) (court of appeals would retroactively invoke amendments to Fed.R.Civ.P. 24(a) which became effective on July 1, 1966 to determine propriety of denial by district court in June 1965 of motion to intervene, where nothing had happened in the case since the filing of the pleadings and further action in the case had been stayed pending determination of whether intervention should be permitted in the case yet to be tried). See also *Long v. Simmons*, 77 F.3d 878, 879 (5th Cir.1996) (amendments to Fed. R.Civ.P. 59(e) which became effective on December 1, 1995 retroactively governed timeliness of motion to alter or vacate judgment filed on February 10, 1994, even though civil action in which motion was filed had been pending since February 1, 1993).

**8.** Also, Bankruptcy Rule 7004(f) only permits the exercise of personal jurisdiction "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States...." Bankruptcy Rule 7004(f). That portion of subsection (f) is apparently a limitation on the exercise by bankruptcy courts of in personam jurisdiction based on nationwide service of process. As such, it is in line with the pronouncements of the Court of Appeals for Eleventh Circuit that, regardless of the availability of nationwide service of process, the exercise of in personam jurisdiction over persons who do not reside in the state where an action has been brought must comport with the due process guarantees of the Fifth Amendment. "The due process clause of the fifth amendment constrains a federal court's power to acquire personal jurisdiction via nationwide service of process." *Nordberg v. Granfinanciera (In re Chase & Sanborn Corp.)*, 835 F.2d 1341, 1344 (11th Cir.1988) (noting, without deciding the issue, that there is a lack of consensus among courts as to whether a due process analysis is necessary where a domestic corporation is served via nationwide service of process), *rev'd sub. nom. on other grounds, Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Subdivision (f) recognizes that in personam jurisdiction based on extraterritorial service of process should not be exercised over non-residents if to do so would offend "... Fifth Amendment requirements of fairness and reasonableness...." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946 (11th Cir.1997).

The change to Rule 7004 may be an outgrowth of the Supreme Court's decision in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), in which the Court "clarified the constitutional underpinnings of personal jurisdiction." *Republic of Panama v. BCCI*, 119 F.3d at 943. Many federal courts have held that Fifth Amendment due process requires only that a defendant in a federal suit have minimum contacts with the United States, so that nationwide service of process confers in personam jurisdiction, regardless of the extent of a defendant's contacts with the state in which the federal court issuing the process is located. *Federal Trade Comm'n v. Jim Walter Corp.*, 651 F.2d 251 (5th Cir.1981). That view is an extension of the theory that personal jurisdiction is coincidental to sovereignty, and that the exercise of personal

### 3. "Arising Under," "Arising in," or "Related to" Subject Matter Jurisdiction Under 28 U.S.C. § 1334 in the Garnishment Proceeding

Bankruptcy judges have no independent jurisdiction over bankruptcy matters but derive their jurisdiction from the district courts that do. This transfusion occurs by way of 28 U.S.C. § 157.

Under section 157, a district court may refer to bankruptcy judges in the same district, any matters over which the district court has jurisdiction under 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 1334(a) that jurisdiction includes exclusive and original jurisdiction over cases filed under the provisions of title 11 of the United States Code, as well as, pursuant to 28 U.S.C. § 1334(b), original, but not exclusive, jurisdiction over civil proceedings *arising under* title 11, civil proceedings *arising in* cases filed under title 11, and civil proceedings *related to* cases filed under title 11.

jurisdiction is limited only by limitations inherent to sovereignty, so that, as long as a defendant is within or has contacts with the sovereign, the exercise of personal jurisdiction is appropriate, even if it is otherwise unfair for the defendant to be required to litigate in the forum where the action against him was brought. In *Insurance Corp. of Ireland*, the Supreme Court held that the personal jurisdiction requirement is meant to protect individual liberty interests and rejected the notion that personal jurisdiction was tied to sovereignty. "It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." 456 U.S. at 702, 102 S.Ct. at 2104.

The minimum contacts criteria of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) define whether the exercise of personal jurisdiction pursuant to nationwide service of process in any given case conflicts with the due process guarantee of the Fifth Amendment. "We look to *International Shoe v. Washington* and its progeny [(Fourteenth Amendment cases) ] for guidance in determining whether due process is satisfied [under the Fifth Amendment]." *Republic of Panama v. BCCI*, 119 F.3d at 944, *quoting Chase & Sanborn*, 835 F.2d at 1345 (citation omitted). In *International Shoe*, the Supreme Court determined that due process requires "that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158 (citation omitted).

Because the pending garnishment is a "proceeding" and not a "case," if this Court is able to exercise any section 157, district court jurisdiction over that proceeding, this Court must be able to characterize the garnishment proceeding as either a civil proceeding *arising under* title 11, a civil proceeding *arising in* cases filed under title 11, or a civil proceeding *related to* cases filed under title 11. Otherwise because of the limitations imposed by Bankruptcy Rule 7004(f), this Court has no jurisdiction whatsoever over the proceeding.

#### a. Arising Under or Arising In

 Section 157 defines both arising under proceedings and arising in proceedings as "core proceedings" under 28 U.S.C. § 157.[9] A nonexclusive list of those proceedings is published in subsection (b)(2) of section 157, but there is no reference to a garnishment proceeding filed for the purpose of collecting a non-dischargeable debt

The garnishee here appears from the record to reside and do business in North Carolina. What if the garnishee has no contacts with the State of Alabama, the territory of this forum? And what if the debt which the garnishee may periodically owe to the defendant is not payable in this state and the person to whom that debt is owed does not reside in this state? Would, under those circumstances, the exercise of in personam jurisdiction over the North Carolina garnishee in this case by virtue of extraterritorial service of process be constitutionally questionable under the due process clause of the Fifth Amendment to the United States Constitution?

9. Arising under is commonly defined as including proceedings involving causes of action created by or determined by a statutory provision of Title 11. *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987). Examples include actions to determine: preferences under 11 U.S.C. § 547; claims of exemptions under 11 U.S.C. § 522; claims of discrimination under 11 U.S.C. § 525; and trustees' avoiding powers under 11 U.S.C. § 544 *et al.*

Arising in is commonly defined as including proceedings that although do not arise under Title 11, would be proceedings that would not exist outside of bankruptcy. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). Examples include the filing of proofs of claims, the filing of complaints to determine dischargeability, administrative matters, counterclaims by the bankruptcy estate against filed claims, allowances or disallowances of claims and plan confirmation hearings.

from post-bankruptcy, non-bankruptcy estate assets. The only item remotely related is item (b)(2)(I) which specifically recognizes "determinations as to the dischargeability of particular debts" as core proceedings. That listing is, unfortunately, of little help, as is the case law construing it. While the case law is abundant in recognizing the right of the bankruptcy court to reduce to judgment a debt which it determines to be non-dischargeable, it is virtually nonexistent in recognizing the jurisdiction of the bankruptcy court to entertain a garnishment brought against a nonparticipant in the bankruptcy process to intercept money owed to the debtor which is not estate property, and, a fortiori, to enter judgment against that nonparticipant. There is simply no support for jurisdiction under this subsection. If any other subsection of section 157 does provide such support, it must be subsection 157(b)(2)(O), as there are no others with any connection.

Subsection 157(b)(2)(O) is a catch-all provision which includes within the definition of a core proceeding "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship...." 28 U.S.C. § 157(b)(2)(O). Obviously the garnishment proceeding filed by the plaintiff herein does not qualify as it involves neither the liquidation of property of the bankruptcy estate nor the adjustment of some dispute between the plaintiff and the debtor. Instead, the garnishment proceeding involves non-estate property and a dispute between the plaintiff-creditor and a nonparticipant in the bankruptcy process, which the plaintiff now seeks a judgment against for the amount of the non-dischargeable judgment rendered against the debtor. Subsection 157(b)(2)(O), therefore, provides no basis for the exercise by this Court of subject matter jurisdiction over the garnishment proceeding.

There are no other subsections of section 157 that could remotely confer arising under or arising in jurisdiction on bankruptcy courts. Because any arising under or arising in jurisdiction that this Court could exercise *must come from that section,* this Court must conclude, based on the above, that it does not have arising under or arising in jurisdiction over the garnishment matter. Consequently, if there is any jurisdiction at all, that jurisdiction exist only if the garnishment matter is a proceeding "related to" the debtor's bankruptcy case, as defined in 28 U.S.C. § 157(c)(1).

### b. Related To

 A proceeding is "related to" a case filed under title 11 if it "could conceivably have an effect on the estate being administered in bankruptcy...." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990)). See also *In the Matter of Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990). And pursuant to 28 U.S.C. § 157(c), a bankruptcy judge may hear a proceeding that is "related to" a title 11 case. But "for federal bankruptcy jurisdiction to exist, a case must at minimum 'relate to' a case under title 11." *Community Bank of Homestead v. Boone (In re Boone),* 52 F.3d 958, 960 (11th Cir. 1995).

This debtor's chapter 7 case is what is commonly referred to as a "no-asset" case. The debtor has no assets over and above those exempt to him that can be brought into the bankruptcy estate and shared among all creditors. Since the plaintiff, in this garnishment proceeding, seeks collection of funds from non-estate assets, not owned by the debtor when bankruptcy was filed, and does not intend to share any funds collected with other creditors, collection by the plaintiff of its non-dischargeable debt will neither enlarge nor diminish the bankruptcy estate, nor be of any benefit to anyone other than the plaintiff. Similarly, collection of the debt by the plaintiff will not reduce the debtor's total liabilities to the benefit of all creditors.

There is no bankruptcy estate to be administered and none can or will be created as a result of this garnishment proceeding; therefore, the garnishment proceeding can have no affect on the administration of this bankruptcy estate. Consequently, 28 U.S.C. § 157(c)(1) does not endow this Court with subject matter jurisdiction over the garnishment.

"The lack of effect on the estate is thus fatal to bankruptcy jurisdiction over the claim." *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d at 961. And neither the fact that the garnishment arguably has some nexus with the determination of non-dischargeability, and the judgment resulting from that determination, nor the fact that the debt which the plaintiff seeks to collect is owed by a bankruptcy debtor, gives rise to bankruptcy jurisdiction over the action against the garnishee. *Id.* "Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy does not bring the matter within the scope of § 1334(b)." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d at 789.

Because the garnishment proceeding in this case did not *arise under* title 11, or *arise in* a title 11 case, and is not otherwise *related to* a title 11 case, the service of process on the garnishee, if it has in fact been properly and legally made, conferred no personal jurisdiction over that garnishee which may be exercised in this Court.[10] As a consequence, because service

10. Of course, generally speaking, a federal court has the inherent supplemental jurisdiction to act as the vehicle for the enforcement of its own orders and collection of its own judgments. "Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir. 1986) (quoting *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867)). A garnishment proceeding filed in the same action in which a judgment was rendered has generally been held to fall within the jurisdiction of the federal court that rendered the judgment. "Garnishment actions against a third party holding property of a judgment debtor have always been held to be within the ancillary 'enforcement' jurisdiction of the federal court, at least if the garnishee admits the debt." *Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1216 (10th Cir. 1992). *However, subdivision (f) of Bankruptcy Rule 7004 alters that general premise so that supplemental jurisdiction cannot be exercised by a bankruptcy court where no jurisdiction over the supplemental proceeding otherwise exists under 28 U.S.C. § 1334.*

If subdivision (f) had not been added to Rule 7004, this Court would be required to decide whether supplemental jurisdiction may be exercised in a proceeding over which it has no independent basis for subject matter jurisdiction under 28 U.S.C. § 1334. Prior to the addition of subdivision (f), in *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 639 (Bankr.N.D.Ind.1996), Bankruptcy Judge Robert E. Grant prophetically held that a bankruptcy court lacks subject matter jurisdiction over supplemental garnishment proceedings filed to collect a nondischargeable money judgment entered against a Chapter 7 bankruptcy debtor. In reaching that decision, Judge Grant determined first that the supplemental garnishment was not "related to" the bankruptcy case, because it did not affect "the amount of property available for distribution or the allocation of property among creditors." *Id.*

at 638 (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987)). Next, Judge Grant determined that although the bankruptcy court had "arising under" jurisdiction to determine the dischargeability of the debt and to fix the amount of the non-dischargeable debt, that jurisdiction ended once those objectives were accomplished. "Once this determination has been made and judgment entered, the bankruptcy purpose for the proceeding has come to an end." 200 B.R. at 639. What is left is essentially a dispute between the creditor and a post-bankruptcy debtor and third parties (such as garnishees) who neither had nor have any relationship to the bankruptcy case, involving property which is not, and cannot become, part of the bankruptcy estate. And, according to Judge Grant, section 1334 does not confer bankruptcy jurisdiction over that type of proceeding:

"[J]urisdiction is the power to decide. It must be conferred, not assumed." *Matter of Chicago, Rock Island and Pacific R. Co.*, 794 F.2d 1182, 1188 (7th Cir.1986) (emphasis original). Just because a federal court has entered a money judgment does not mean that it also has subject matter jurisdiction over all proceedings designed to turn that judgment into cash. *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). See also *Matter of FedPak Systems, Inc.*, 80 F.3d 207 (7th Cir.1996) (bankruptcy court lacked jurisdiction to clarify its prior judgment in an adversary proceeding where the debtor's rights in the property were no longer part of the bankruptcy estate). Bankruptcy jurisdiction is limited by the purpose for which it is given. *Xonics*, 813 F.2d at 131. The bankruptcy court has the undeniable jurisdiction to determine the dischargeability of a debtor's obligations to creditors. In doing so, it may also determine the amount of any nondischargeable debt and enter an appropriate money judgment. Nonetheless, once this is done the court's jurisdictional mission has been fulfilled. Proceedings designed to collect that judgment are not a bankruptcy concern and serve no bankruptcy

purpose. They will involve only the successful creditor, the now post-bankruptcy debtor and its post-bankruptcy assets. "[T]here is no reason for the bankruptcy court's jurisdiction to linger." *Xonics*, 813 F.2d at 132.

Section 1334(b) does not confer the jurisdiction needed to enforce a non-dischargeable money judgment entered against a bankruptcy debtor. Bankruptcy jurisdiction over the proceeding lapses when the judgment becomes final. To enforce such a judgment, the plaintiff must turn to a court whose jurisdiction is more enduring.

200 B.R. at 639–640.

In *Boyer v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*, 200 B.R. 857 (Bankr.N.D.Ind. 1996), Judge Grant held that a bankruptcy court lacks subject matter jurisdiction to entertain a supplemental proceeding to set aside a fraudulent conveyance, and to sell the fraudulently conveyed property to satisfy a judgment rendered by the bankruptcy court in favor of the Chapter 7 trustee, which had been assigned by the Chapter 7 trustee to a trustee for unpaid administrative expense claimants. The basis of Judge Grant's decision is that a bankruptcy court's inherent supplemental jurisdiction to collect its own judgments is limited by section 1334(b) to proceedings "arising in," "arising under," and "related to" a case filed under title 11. Judge Grant reasoned that because the assigned judgment was no longer property of the bankruptcy estate, proceedings to collect the judgment would not inure to the benefit of the bankruptcy estate, and were therefore not "related to" the bankruptcy case, even though, when the judgment was rendered, the court had section 1334(b) jurisdiction to determine the proceeding leading to the judgment. "Enforcement of the court's judgment will have neither benefit nor detriment to the bankruptcy estate or the creditors who will share it. As a result, 'there is no reason for the bankruptcy court's jurisdiction to linger.'" 200 B.R. at 639 (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d at 789.)

Judge Grant's decision in the *Import & Mini Car Parts, Ltd., Inc.* case was affirmed by the district court in *Miller v. Conte (In re Import & Mini Car Parts, Ltd., Inc.)*, 203 B.R. 124 (N.D.Ind.1996). In affirming, the district court agreed that jurisdiction could not be sustained under section 1334(b):

In the present case, as Judge Grant explained, the resolution of the dispute between Miller and Conte regarding an alleged fraudulent conveyance by the latter does not in any way impact the property of the bankruptcy estate that would be available for creditors. It does not involve a claim by or against the debtor, nor does it deal with a claim "to the bankrupt's assets." *Xonics*, 813 F.2d at 131. What is present in this case is nothing more than "the hovering shadow of an earlier bankruptcy." *Langella*, 39 B.R. at 619. Neither the parties to this suit nor the facts behind it are related to the underlying bankruptcy proceeding in a manner that would sustain the court's jurisdiction under 28 U.S.C. § 1334(b).

203 B.R. at 130.

The district court also agreed that jurisdiction over proceedings supplemental to enforce a judgment of the bankruptcy court should not be exercised if jurisdiction over such proceedings does not otherwise exist under section 1334(b). "As Judge Grant pointed out repeatedly, the present action fails to fall under the bankruptcy court's ancillary jurisdiction since it clearly does not go to the heart of the underlying bankruptcy, but merely has a remote connection to it, something akin to a distant cousin once removed." *Id.* at 131.

The district court's decision, and that of Judge Grant, was affirmed by a panel of the Court of Appeals for the Seventh Circuit in an unpublished opinion. *In re Import & Mini Car Parts, Ltd.*, Inc., 97 F.3d 1454 (Table), 1996 WL 554450 (7th Cir., Sept. 27, 1996). The court agreed that proceedings supplemental to enforce a bankruptcy court judgment must at least be "related to" a bankruptcy case before a bankruptcy court may exercise jurisdiction over those proceedings:

What Miller attempts to do here is to invoke federal jurisdiction over something that, as the bankruptcy court noted, is "in reality, nothing more than a garden variety fraudulent conveyance action, governed by state law, brought by a creditor in an effort to collect an outstanding debt." Bankruptcy Op. at 4. And while the creditor may surely be entitled to attempt to collect the debt, he may not use the guise of federal bankruptcy jurisdiction to keep a state action in federal court once the bankruptcy jurisdiction has lapsed. This is not, as appellant argues, an attempt to "fob ... off on the state courts" something at "the heart of the bankruptcy." *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 82 (7th Cir.1995) (holding that district court no longer had federal jurisdiction over a "related to" proceeding once the bankruptcy case had been dismissed). Miller's fraudulent conveyance claim can hardly be described as at the heart of the bankruptcy. Rather, as Chief Judge Posner vividly described in *Chapman*, it is "like the cartoon character who remains momentarily suspended over a void, spinning his legs furiously, when the ground has been (quite literally) cut out from under him." *Chapman*, 65 F.3d at 81. Here, Miller's claim is actually in a much better position than the cartoon character because it is not about to fall perilously into the depths of the void. Rather, Miller's state law claim has a safe haven in the state courts of Indiana.

1996 WL 554450 at **4.

All three of the *In re Import & Mini Car Parts, Ltd., Inc.* courts agreed that bankruptcy jurisdiction, including the supplemental jurisdiction of a bankruptcy court to enforce its own judgments, does not continue indefinitely, but, instead, terminates once continuation of a proceeding, or enforcement of the judgment, no longer has relevance to the bankruptcy estate. That conclusion has support in language contained in the decision of the Court of Appeals for the Eleventh

Circuit in *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990); language that was quoted by Judge Grant in his decision. In *Lemco*, the court held that the bankruptcy court lacked subject matter jurisdiction to hold the purchaser of property from the Chapter 7 trustee in contempt at the behest of the debtor's former landlord for failure to remove the property from land owned by the landlord within 60 days following the sale as required by the bankruptcy court's order authorizing the sale. The district court had affirmed the bankruptcy court's finding of contempt as a legitimate exercise by the bankruptcy court of its continuing power to enforce its orders. The circuit court concluded, however, that once the property was sold it left the bankruptcy estate, so that after that point, any dispute regarding or arising from the circumstances surrounding that sale were unrelated to the bankruptcy case. Consequently, the bankruptcy court lacked jurisdiction under 1334(b) over the dispute between the purchaser and the debtor's former landlord since the resolution of that dispute involved only issues of state law and could have no impact on the administration of the bankruptcy estate. Writing for the court, Senior Circuit Judge Edward S. Smith explained:

> The circuits have developed slightly different definitions of what constitutes a related case under § 1471(b) and its nearly identical successor, § 1334(b). However, **it is well settled that the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is limited initially by statute and eventually by Article III.** For subject matter jurisdiction to exist there must be some nexus between the related civil proceeding and the Title 11 case. **In exploring the bounds of this nexus we endeavor to seek a definition for "related to" that best represents Congress' intent to "reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding".** The interpretation of § 1334(b) must also avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate. **This court is also concerned that an overbroad construction of § 1334(b) may bring into federal court matters that should be left for state courts to decide.**
>
> . . . . .
>
> The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property. The broad jurisdictional provisions set forth in § 1334 grant the district courts power to supervise the entire restructuring of the debtor's estate. However, once property is sold, further disputes have nothing to do with the debtor's estate. The dispute here is between debtor's landlord and Miller Resources; there is no suggestion that the proceeds, if recovered, would be turned over to the trustee. The judgment of the bankruptcy court orders Miller Resources to pay damages directly to debtor's

landlord, so we fail to see how recovery could conceivably have an effect on debtor's estate. This dispute does not involve the identification of the debtor's property interests and cannot affect other creditors. There is no reason for the bankruptcy court's jurisdiction to linger.

> As noted by the Seventh Circuit in *Matter of Chicago, Rock Island & Pac. R.R. Co*, the presence of a federal right or decision in the chain of title is insufficient to confer jurisdiction on a federal court. **Only when federal law supplies the rule of decision, or an interpretation of a federal right is an essential ingredient of a claim, does the dispute present a federal question.** New disputes arising after the property has been sold by the trustee to a third party must be resolved through the processes available for the resolution of such independent disputes. In other words, **this dispute is about rights incident to the ownership of real property, a question of state law. Such disputes should be decided by a state court; state law supplies the rule of decision for disputes concerning property transferred from bankrupts.**
>
> We hold that the dispute between Miller Resources and Kemira is not "related to" the bankruptcy; its connections with the estate of debtor Lemco are simply too tenuous for jurisdiction to lie under § 1334(b). Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b). Judicial economy itself does not justify federal jurisdiction. The district court had no independent basis for federal question jurisdiction over the dispute between Miller Resources and Kemira.
>
> . . . .
>
> The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets, but it cannot be extended beyond its purpose. **That two third parties have an internecine conflict concerning the debtor's property is of no moment once all disputes concerning the creditors' stakes in the bankrupt's property have been resolved.**

910 F.2d at 787–790 (footnotes omitted) (emphasis added).

Application of the quoted sections of the court's decision in *Lemco* to the circumstances of the garnishment proceeding involved in this case would ostensibly lead to the conclusion reached by Judge Grant in *Sieger*, even if the new subdivision (f) had not been added to Rule 7004. This case, like *Lemco*, involves a dispute that began with a bankruptcy court's judgment (between parties who are not involved in the bankruptcy case) over property which is not part of the bankruptcy estate. The judgment debt sought to be collected is based on state law liability and collection of that judgment debt must proceed under Fed.R.Civ.Pro. 69 according to state law.

under 7004(d) does not confer in personam jurisdiction over the garnishee, this Court has, in fact, no jurisdiction to render a judgment against that garnishee.[11]

### C. Plaintiff's Remedies

#### 1. Registration of the judgment under 28 U.S.C. § 1963.

■ The federal statute governing the registration of a judgment of a federal court in one district with the federal court in any other district provides an efficient, easily implemented, and convenient vehicle for collecting bankruptcy judgments against non-resident property and from non-resident garnishees. 28 U.S.C. § 1963. That statute provides as follows:

§ 1963. Registration of judgments for enforcement in other districts

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, **bankruptcy court,** or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphasis added).

This proceeding involves a simple wage garnishment. Absent subdivision (f) of Bankruptcy Rule 7004, this Court would be obliged to determine whether Alabama garnishment procedural law may be applied extraterritorially to a North Carolina garnishee by use of Rule 7004(d) in conjunction with Rule 7069.[12] An affirmative resolution of

Federal law does not provide the rules of decision relating to collection of the judgment and collection of the judgment does not involve in any way the interpretation of a federal right. Absent the happenstance of bankruptcy, which, in effect, had no effect on the relationship between the debtor and the plaintiff, both liquidation and collection of the debt owed by the debtor to the plaintiff would have proceeded exclusively in state courts and this garnishment proceeding could only have been instituted in North Carolina courts after domestication by the plaintiff of its judgment in that state. Therefore, under the tenants of *Lemco*, the exercise of this Court over the plaintiff's state law based garnishment proceeding to enforce a judgment based solely on state law claims might represent that "overbroad construction of 1334(b)" which "may bring into federal court matters that should be left for state courts to decide" and defeat "Congress' intent to 'reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding.'" 910 F.2d at 787.

11. The plaintiff, however, is not prejudiced as it is not without remedies. There are at least two relatively convenient and inexpensive alternatives. These include registration of the judgment in North Carolina federal courts pursuant to 28 U.S.C. § 1963 or domestication of the judgment in the North Carolina state courts.

12. Each state has the exclusive right to determine what property may be appropriated by process of law to the payment of judgments. "Every state has jurisdiction to determine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts." *Clark v. Williard,* 294 U.S. 211, 213, 55 S.Ct. 356, 357, 79 L.Ed. 865 (1935). That right would be emasculated if a court in one state could issue process for the collection of a judgment of that court that would result in a levy on property located in other states. For that reason, a judgment rendered by a court in one state cannot, without more, be enforced, by execution, levy or otherwise, in another state. Only if the judgment is first "domesticated" in the state in which levy is sought can property in that state be made subject to seizure and sale for the satisfaction of the foreign judgment. In an early opinion, the Supreme Court described the effect and limitations of a judgment entered by the courts of one state on the persons and property located in another. The opinion of the Court reads:

[T]he judgment is made a debt of record, not examinable upon its merits; but it does not carry with it, into another state, the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit. It must be conceded, that the judgment of a state Court cannot be enforced out of the state by an execution issued within it. This concession admits the conclusion, that under the first section of the fourth article of the Constitution, judgments out of the state in which they are rendered, are only evidence in a sister state

that the subject matter of the suit has become a debt of record, which cannot be avoided but by the plea of nul teil record.

*McElmoyle v. Cohen*, 38 U.S. 312, 325, 13 Pet. 312, 10 L.Ed. 177 (1839).

If a judgment entered by the courts of one state have no extraterritorial effect, for purposes of execution, until domesticated in the state where the property sought is located, what then, for purposes of execution, is the extraterritorial effect of the judgment of a federal trial court. Generally, a judgment of a federal court is considered the same as, and is entitled to no greater nor less respect than a judgment of a court of the state in which the federal court sits. "It may be conceded, then, that the judgments and decrees of the circuit court of the United States, sitting in a particular state, in the courts of that state, are to be accorded such effect, and such effect only, as would be accorded in similar circumstances to the judgments and decrees of a state tribunal of equal authority." *Hancock Nat'l Bank v. Farnum*, 176 U.S. 640, 645, 20 S.Ct. 506, 508, 44 L.Ed. 619 (1900). "While the judicial proceedings of the federal courts are not within the terms of the constitutional provision, such proceedings, nevertheless, must be accorded the same full faith and credit by state courts as would be required in respect of the judicial proceedings of another state." *Supreme Lodge, K.P. v. Meyer*, 265 U.S. 30, 33, 44 S.Ct. 432, 433, 68 L.Ed. 885 (1924). In *Dupasseur v. Rochereau*, 21 Wall. 130, 88 U.S. 130, 22 L.Ed. 588 (1874), the Supreme Court offered the opinion that:

"[T]he judgments of the courts of the United States have invariably been recognized as upon the same footing, so far as concerns the obligation created by them, with domestic judgments of the states, wherever rendered and wherever sought to be enforced. The rule for determining what effect shall be given to such judgments is that declared by this court, in respect to the faith and credit to be given to the judgments of state courts in the courts of other states, in the case of *McElmoyle v. Cohen*, 13 Pet. 312, 326, 10 L.Ed. 177 . . . ." *Embry v. Palmer*, 107 U.S. 3, 10, 2 S.Ct. 25, 30–31, 27 L.Ed. 346 (1883). The only effect that can be justly claimed for the judgment in the Circuit Court of the United States, is such as would belong to judgments of the State courts rendered under similar circumstances. . . . It is apparent, therefore, that no higher sanctity or effect can be claimed for the judgment of the Circuit Court of the United States rendered in such a case under such circumstances than is due to the judgments of the State courts in a like case and under similar circumstances.

88 U.S. at 135.

Therefore, since a state court judgment for money damages cannot be enforced in another state by levy, execution or similar process, absent domestication, neither can the judgment for money damages rendered by a federal trial court be so enforced, absent domestication or explicit Congressional authority. "A party seeking to enforce a Federal judgment does not have unbridled discretion in choosing the forum. An action to enforce a Federal judgment can be pursued successfully only in a State in which the property or other assets are located or where the person against whom the judgment has been entered can be located." *Budish v. Daniel*, 417 Mass. 574, 631 N.E.2d 1009, 1012 (1994).

However, for purposes of determining the amenability of property to garnishment or other collection process, the location, or situs, of an intangible, or more specifically, a "debt," is a concept which is different from that of the location of tangible property. The location of the latter is its actual physical location, while the former has no material existence, and, therefore, has no physical location. A debt is considered located in any (and every) state where the garnishee may be sued, i.e., where personal jurisdiction over the garnishee may constitutionally be exercised. *Harris v. Balk*, 198 U.S. 215, 223, 25 S.Ct. 625, 626–27, 49 L.Ed. 1023 (1905), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

The proceedings in aid of collection of judgments rendered by this court must follow Alabama proceedings in aid of collection of judgments. "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." Fed.R.Civ.P. 69(a) (made applicable to adversary proceedings by Bankruptcy Rule 7069). Under Alabama law, and the law of every other jurisdiction, no process of garnishment may issue against a non-resident garnishee who has no minimum contacts with the state of Alabama necessary for the exercise of in personam jurisdiction in accordance with the principles promulgated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2583–84, 53 L.Ed.2d 683 (1977). Therefore, Alabama courts would be unable to utilize the garnishment "practice and procedure" provided for by the statutes of the state of Alabama to reach the funds in the hands of the North Carolina garnishee involved in this case.

The supplemental jurisdiction of this Court, by virtue of Fed.R.Civ.P. 69(c), mirrors that of Alabama courts, and rides piggyback on the Alabama "practice and procedure" available to those courts. If no procedure is available to Alabama courts to garnish a debt owed by a non-resident garnishee with no minimum contacts with this state, what statutory foundation does this Court have to garnish a debt owed by a non-resident garnishee with no minimum contacts with this state? Can Fed.R.Civ.P. 69(c) properly be said to provide a statutory basis for the extra-territorial enforcement of the money judgment rendered in this adversary proceeding vis-a-vis the garnishment "practice and procedure" of the

state of Alabama, if no such "practice and procedure" is in fact available to Alabama courts for acquiring funds in the hands of the North Carolina garnishee involved in this case?

If subdivision (f) of Bankruptcy Rule 7004 was not determinative of the issues in this case, the plaintiff would argue that since Bankruptcy Rule 7004(d) authorizes nationwide service of process, this Court has in personam jurisdiction over the garnishee, and since Rule 7004(d) is a "statute of the United States" it "governs to the extent that it is applicable," so that in personam jurisdiction limitations that would preclude Alabama Courts from issuing garnishments against non-resident garnishees, should not operate to prevent this Court from doing so in accordance with the Alabama statutes. This issue, in the bankruptcy context and in the context of other cases based on federal question jurisdiction, has been addressed only a few times in the reported cases.

Some of the courts that have addressed the issue have held that the availability of nationwide service of process allows federal courts to extend the collection procedure provided them under state law by virtue of the federal rules beyond the territorial boundaries that would otherwise limit the availability of the same procedure to state courts. "[T]his Court is convinced that Rule 7004(d) supersedes the Kansas procedure for service of process and authorizes nationwide service of a garnishment order issued by a bankruptcy court located in Kansas." *American Freight System, Inc. v. Temperature Systems, Inc. (In re American Freight System, Inc.)*, 173 B.R. 739, 743 (Bankr.D.Kan.1994) (bankruptcy court had supplemental jurisdiction to entertain garnishment proceedings against out-of-state banks to enforce money judgment in favor of Chapter 11 debtor because rule 7004(d) superseded state procedure for service of process in garnishment proceeding and authorized nationwide service of garnishment order). See also *Allison v. Gate Electronics, Inc. (In re Mycro–Tek, Inc.)*, 191 B.R. 188, 191 (Bank.D.Kan.1996) (agreeing with the decision in *American Freight* in exercising jurisdiction over garnishment proceeding to reach funds held by out-of-state bank to enforce judgment of the bankruptcy court obtained by bankruptcy trustee in suit against bank depositor); *Mayex II v. Du–An Products, Inc. (In re Mayex Corp.)*, 178 B.R. 464, 468 (Bankr.W.D.Mo.1995) (bankruptcy court had subject matter jurisdiction over supplementary enforcement proceeding against out-of-state judgment debtors, against whom judgments had been entered in "core" preference proceedings, pursuant to bankruptcy court's enforcement jurisdiction, and thus, methods for service of process permitted by bankruptcy rule applied, including nationwide service of process and service by first class mail).

Other courts, however, have rejected the same argument and concluded that state law collection procedures are only available to federal courts to the same extent and under the same circumstances that the same procedures may be implemented by state courts, so that the availability of nationwide service of process does not suffice to extend those procedures to reach property and debts located beyond the territorial limits of the particular state. "That a federal statute authorizes extraterritorial service of process does not mean that provisional remedies, which are governed by state laws, may also have extraterritorial efficacy." *Murdock v. Allina (In re Curtina International)*, 15 B.R. 993, 997 (Bankr.S.D.N.Y. 1981) (despite provision for extraterritorial service of process in Bankruptcy Rule 7004(f), New York statutory attachment remedy is available to bankruptcy trustee only under the circumstances and in the manner provided by the law of New York, and since there is no authority Under the New York statute for the issuance of an order of attachment to an officer in another state with respect to property located in that state, the remedy of attachment authorized under the New York statute does not by its terms extend beyond the territorial boundaries of New York, and bankruptcy court located in New York was not authorized to issue a warrant of attachment directed to a United States marshal in Texas that relates to property of nondebtor defendants residing in that state). See also *Paul H. Aschkar & Co. v. Curtis*, 327 F.2d 306, 308 (9th Cir.1963) (Congress did not intend by virtue of grant of nationwide service of process to confer upon district courts the power to reach and control property and debts situated beyond the territorial limits of the states in which they are located, so that provisions of Securities Exchange Act of 1934 which stated that "process" may be served wherever the defendant may be found, provided district court in California with no jurisdiction to reach by attachment assets of defendant in New York and debts owing to defendant by persons residing or doing business in New York); *Robbins v. Spencer's Steel Storage, Inc.*, 1983 WL 152 (Ill. August 2, 1983) (Illinois federal district court lacked authority to entertain garnishment proceeding to reach funds in Indiana garnishee bank for purpose of collecting judgment rendered in ERISA action, despite availability of nationwide service of process under ERISA, since garnishee was neither charged with a violation of ERISA nor enjoined under a court order seeking to remedy ERISA violations; therefore, plaintiff causing writ to be issued would be sanctioned for prosecuting garnishment proceeding after district court expressed doubts about the validity of the garnishment). See e.g. *Federal Deposit Insurance Corp. v. Rodenberg*, 622 F.Supp. 286 (D.Md.1985) (Maryland law on attachment procedures should be applied by federal district court under the same circumstances and in the same manner as in the Maryland state courts, and since Maryland state courts could not issue extraterritorial attachment under Maryland statute, federal district court could not issue attachment to reach property outside of that state). *General Electric Credit Corp. v. Waukesha Building Corp.*, 259 F.Supp. 958, 963 (W.D.Ark.1966) (writ of garnishment issuing from federal district court located in Arkansas and directed to United States marshal for service on Tennessee garnishee was void on its face, absent express authorization by Arkansas statute for issuance of garnish-

972

that issue would transform this proceeding into a complicated matter, with the potential of being a logistical, administrative, and legal quagmire both to this Court and the garnishee.[13] On the other hand, registration by the

ment directed out of state, even though service could be had on the garnishee under Arkansas long-arm statutes).

The Ninth Circuit Court of Appeals, in *Paul H. Aschkar & Co. v. Curtis,* 327 F.2d 306 (9th Cir. 1963), provides the most salient exposition of the latter view:

Identical or similar extensions of the territorial limits on service of process have been authorized by Congress for suits brought under the Securities Act and antitrust laws, certain actions under the Interstate Commerce Act, actions of interpleader, and for serving a stockholder's corporation in his derivative suit. Numerous decisions have found in such extending legislation the authority to obtain personal jurisdiction over a defendant by causing him to be served with summons in a foreign district; and it is not disputed that in this case § 78aa authorized the district court in California to issue a summons which, when served on the defendant in New York, subjected the defendant to the in personam jurisdiction of the California court. The question here, however—one which apparently has not heretofore been resolved under any of these process-extending statutes—is whether Congress also intended by use of the word "process" in this section to include writs of attachment and, in this fashion, to confer upon district courts a power to reach and control property and debts situated beyond the territorial limits of the states in which they are located.

In our judgment the section cannot be so construed.

Petitioner has cited to us other instances in which "process" has been construed to include attachment. In no instance did such construction result in such an extension of jurisdiction as confronts us here.

It also appears that petitioner is correct in its contention that, as a matter of general usage, writs of attachment are included within the term "process" in the provision of Fed. R.Civ.P. 4(f) that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States *** beyond the territorial limits of that state." Thus, we may assume that, just as its summons may reach throughout the state to obtain personal jurisdiction, so, a district court's writ may effectively attach property anywhere within the forum state—not merely within the former traditional jurisdictional limit of its district.

But it does not necessarily follow from this broad meaning of "process" in Rule 4(f) that any Congressional legislation expanding the territorial limits of "process" automatically applies to all process, including attachment. It must be recognized that it is such special expanding legislation, rather than Rule 4(f), which is the source of any such extension; and

the word "process" in such legislation must be considered in the context of the statute as a whole. Thus viewed, we must ask here, as with any special legislation of this kind, whether this extension of the territorial limits of service of process was meant to achieve anything other than an extension of the power to obtain personal jurisdiction. We think that it was not. The quoted language of § 78aa simply does not aptly apply to property or to those owing debts to the defendant. If jurisdiction over property or debts had been contemplated the section would have permitted service of "process" in districts in which property of the defendant or persons liable to the defendant are located. It makes little sense to allow foreign attachment in those districts in which defendant may reside or be found and to deny it elsewhere. Congress, we are convinced, intended only to provide for extraterritorial service of the "process" necessary to obtain personal jurisdiction, and simply did not have the problem of foreign attachment in mind at all. 327 F.2d at 308–309.

13. Subdivision (f) of Bankruptcy Rule 7004, in matters which are not at least "related to" a bankruptcy case, has eliminated concerns regarding the extraterritorial effect of the post-judgment remedies provided for by the law of the forum state; minimum contacts questions; and concerns regarding the fairness of exercising personal jurisdiction over non-resident garnishees, as well as concerns regarding the propriety of exercising subject matter jurisdiction over proceedings which have no effect on the bankruptcy estate.

The new subdivision (f) also eliminates concerns arising from the Supreme Court's recent decision in *Peacock v. Thomas,* 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817, (1996), which has created doubts regarding the efficacy of supplementary judgment enforcement jurisdiction in circumstances where the aim of the proceeding is to impose liability for a judgment on an entity who was not party to the original proceeding and who is otherwise not liable for the judgment, and where there is no basis independent of supplemental jurisdiction for the exercise of federal subject matter jurisdiction over the proceeding. "Our recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment. We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." 516 U.S. at 357, 116 S.Ct. at 868 (pagination of United States Reports unavailable).

Since the plaintiff has asked for judgment to be rendered against the garnishee for the amount of

plaintiff of its judgment in a North Carolina federal court, and subsequent filing of a garnishment in that federal court pursuant to Rule 7069 in accordance with North Carolina state law procedures, provide a relatively simple method of enforcing the plaintiff's judgment, and offers the plaintiff many benefits. The task may be accomplished by way of the telephone, a facsimile machine or the mail; registration should result in no undue prejudice or hardship to the garnishee; and a North Carolina federal judge is better equipped to interpret and apply the substantive law of that state which may have been applicable to this proceeding even if it had remained before this Court.[14] Similarly, reg-

the non-dischargeable judgment rendered against the debtor, an amount which vastly exceeds any debt for wages that may be owed by the garnishee to the debtor, the concerns stated by the Supreme Court in *Peacock* would make the exercise of supplemental jurisdiction over the garnishee in this case, and a grant of a judgment against that garnishee, somewhat questionable. "[I]f the proceedings are entirely new and original or seek relief different in kind, on a different principle, *or to impose liability on persons not already bound by the previous action and judgment, the moving party must be able to assert an independent basis for federal jurisdiction over the controversy with the third party." Travelers Indem. Co. of Illinois v. Hash Management, Inc.*, 173 F.R.D. 150, 153 (M.D.N.C.1997).

**14.** Garnishment law contains both procedural and substantive elements. Rule 7069 authorizes a federal court to adopt "the practice and procedure of the state" in which the court is held, not the substantive law of that state. Bankruptcy Rule 7069 requires this Court to follow Alabama garnishment procedure. It does not, by its terms, dictate that Alabama law must be adopted to govern the substantive issues between an Alabama plaintiff and a non-resident garnishee.

The difficulty of discerning what issues are properly considered "procedural" and what issues are "substantive," and determining what law is applicable to the determination of "substantive" issues, combined with the possibly deleterious consequences of applying the law of the forum state to nonresident persons and property makes it difficult, even absent Rule 7004(f), to conclude that Congress intended for the grant of nationwide service of process to confer upon bankruptcy courts the power in supplemental proceedings to reach and control property and debts situated beyond the territorial limits of the states in which they are located. "[T]he granting of district court jurisdiction over property and debtors foreign to the district is a serious and debatable matter upon which the courts should not lightly proceed to judge what Congress would have done had it considered the question.... Even more particularly is this so where, as here, the extension sought would permit the law of the forum *state to be imposed abroad* with respect to matters upon which state laws are greatly divergent." *Paul H. Aschkar & Co. v. Curtis*, 327 F.2d 306, 310 (9th Cir.1963).

Both the defendant and the garnishee are residents of North Carolina. The debt owed by the garnishee to the defendant was created in North Carolina and is payable in North Carolina.

Should, therefore, substantive issues regarding the nature of the debt owed by the garnishee to the defendant, including its susceptibility to garnishment, be governed by North Carolina law? Or should the resolution of those issues be ruled by the law of Alabama, the forum state? "The dominion of a state over personal or movable property within its borders is complete, and its right to regulate the transfer of such property, and to subject it to process and execution in its own way and by its own laws is unquestioned; and only so far as that state allows can such property be affected by the law of any other state." 16 Am.Jur.2d Conflict of Laws § 43 (1979).

The choice of North Carolina law to determine the susceptibility of the debt owed by the North Carolina garnishee to legal process may be constitutionally dictated by the due process clause of the Fifth Amendment. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). "[I]f a State has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional." *Id.* at 311, 101 S.Ct. at 639.

In this case, the only apparent contact that Alabama has with the debt owed by the North Carolina garnishee to the debtor/defendant is the fact that the debtor/defendant once lived in this state, and while living here, filed the bankruptcy case which underlies this adversary proceeding. The choice of Alabama law to determine whether or not that debt is subject to process of garnishment may not, therefore, be constitutionally proper.

North Carolina, on the other hand, appears to have a multitude of important and significant contacts with the defendant, the garnishee and the debt sought to be garnished. Both the defendant and the garnishee reside in North Carolina. Presumably, the debt sought to be garnished (wages owed by the garnishee to the defendant) was created in North Carolina and is payable there. The debt appears to have arisen from an employment relationship between the defendant and the garnishee which exists solely within the confines of that state. Therefore, application of North Carolina law may be constitutionally proper.

istration by the plaintiff of his judgment in North Carolina will have the added benefit to the plaintiff of creating a lien in North Carolina on the defendant's property in the district where the judgment is registered.

### 2. Domestication of the Judgment Under State Law.

The fact that a relatively convenient and efficient vehicle for enforcing the judgment of a bankruptcy court also exists under state law further supports the conclusion that subdivision (f) of Bankruptcy Rule 7004 precludes this Court's exercise of subject matter jurisdiction over the present garnishment proceeding. State courts are required to give full faith and credit to the judgments of federal courts. However, to be enforced in a state court, a federal court judgment must first be domesticated in that state. Generally speaking, domestication of a federal court judgment in a state court can be accomplished by registration of the judgment in whatever county within the state that is designated by state law, ordinarily the county where the debtor resides or owns property.

While state procedures for domestication by registration vary, those variations are for the most part de minimis. In fact, most states, including North Carolina, have adopted some form of the Uniform Enforcement of Foreign Judgments Act. The process described under the North Carolina statute merely requires the judgment holder to file an authenticated copy of the judgment in the office of the clerk of the superior court of any county of that state in which the judgment debtor resides, or owns real or personal property, along with an affidavit which states that the foreign judgment is final and unsatisfied in whole or in part, and which sets forth the amount remaining unpaid on the judgment. N.C.Gen.Stat. § 1C–1703(a)(1996). Upon the filing of the foreign judgment and affidavit, the judgment creditor must serve a notice of the filing upon the judgment debtor. N.C.Gen.Stat. § 1C–1704(a) (1996). If relief from the judgment is not sought by the judgment debtor within 30 days, the judgment becomes, in effect, a North Carolina judgment and has the same effect and can be enforced in North Carolina courts in the same manner as a judgment of that state. N.C.Gen.Stat. § 1C–1703(c) (1996).

### D. Conclusion

The record does not demonstrate that service has been properly and legally made on the garnishee in accordance with Bankruptcy Rule 7004, therefore, no judgment may be entered against the garnishee and the plaintiff's motions must be denied.

This Court lacks subject matter jurisdiction over this garnishment proceeding under 28 U.S.C. § 1334, therefore, the garnishment proceeding must be dismissed. Bankruptcy

---

Different answers to this sticky choice-of-law question would result in drastically different results. Alabama law permits the continuing garnishment of wages. North Carolina law, however, severely limits the garnishment of wages. In North Carolina, unearned wages, or prospective wages, cannot be expropriated by garnishment, so that the garnishment proceeding can only conceivably effect wages earned and due on the day the garnishment proceeding is served, and not wages which may subsequently accrue. The North Carolina Supreme Court explains:

[I]t is plain that a supplemental proceeding against a third person is designed to reach and apply to the satisfaction of the judgment property of the judgment debtor in the hands of the third person or debts due to the judgment debtor by the third person at the time of the issuance and service of the order for the examination of the third person. Prospective earnings of a judgment debtor are entirely hypothetical. They are neither property nor a debt.

*Motor Finance Co. v. Putnam,* 229 N.C. 555, 50 S.E.2d 670, 671 (1948).

And, of wages earned by the judgment debtor for personal services within 60 days of the service of the garnishment proceeding, only that portion which is unnecessary for the use of the judgment debtor and his family may be expropriated. The North Carolina statute reads:

The court or judge may order any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of the judgment debtor), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment except that the earnings of the debtor for his personal services, at any time within 60 days next preceding the order, cannot be so applied when it appears, by the debtor's affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor.

N.C.Gen.Stat. § 1–362 (1996).

Rule 7069 provides that proceedings brought in the bankruptcy court to aid in the collection of a judgment rendered by that court must be conducted in accordance with the practice and procedure of the state in which the court is located. The plaintiff in this case seeks, by way of garnishment filed in this adversary proceeding, to collect a judgment rendered by this Court from wages purportedly owed by the garnishee to the defendant against whom the judgment was rendered. Because the garnishment can have no effect on the bankruptcy estate, this Court has no "related to" jurisdiction over it pursuant to 28 U.S.C. § 1334(b). And since there is no subject matter jurisdiction over this garnishment proceeding which exists by virtue of 28 U.S.C. § 1334(b), then, according to Bankruptcy Rule 7004(f), this Court may not exercise in personam jurisdiction over the garnishee. And because this Court may not exercise in personam jurisdiction over the garnishee under any circumstances, it may not, pursuant to Bankruptcy Rule 7069, apply Alabama post-judgment collection procedures to that garnishee, even as a valid exercise of supplemental jurisdiction.

Based on the foregoing, it appears to the Court that the Court's oral ruling on August 18, 1997 effectively granting the *Motion for Entry of Judgment Against Garnishee* is due to be vacated, see note 3 above; the plaintiff's *Motion for Entry of Judgment Against Garnishee*, proposed order for *Conditional Judgment Against Garnishee* and *Motion for Entry of Conditional Judgment Against Garnishee* are due to be denied; and the garnishment proceeding filed by the plaintiff in this adversary proceeding is due to be dismissed.

A separate order will be entered in conformity with this memorandum opinion.